A04A0703. THE STATE v. MORGAN.
(600 SE2d 767)

ADAMS, Judge.

The State appeals the trial court's order granting Garie Garfield Morgan's motion to suppress in this case in which Morgan was charged with trafficking marijuana. The trial court found that the roadblock at which Morgan was stopped was not approved by a supervisor for the date and time that it actually occurred.

Sergeant Kirk Hartwell of the Interstate Criminal Enforcement Unit (ICE), whose function, according to Hartwell, is to "look[ ] for any criminal activity on I-16," testified about the decision to implement the roadblock. Although he stated that he holds a supervisory position and that it was his decision to implement the roadblock, the roadblock was approved in writing by his supervisor, Major Carson Knight. Hartwell testified that he made the decision about when and

where to have the roadblock. He also testified that the purpose of the roadblock was "a license/DUI checkpoint." But he went on to explain that the decision to implement the roadblock was based on broader concerns: "We've just had an influx of drug cases, me and the guys that we work with, and we just thought that [. . . ,] and the DUI, we've had a lot of DUI's during that time frame. . . ." He elaborated, "our job is *any criminal activity* on the interstate and drugs are prevalent. I mean, there's a lot of drugs out there; there's a lot of DUI's out there, you know, so *any criminal activity* that's what we're out there for." (Emphasis supplied.) He testified that there was no particular reason that they selected the day of the roadblock but that the roadblock was authorized for two days.

The signed authorization, however, is inconsistent with Hartwell's testimony. First and foremost, the authorization indicates that the roadblock would occur on only one day, April 19, 2002, from 3:00 p.m. to midnight. Second, it indicates that the "objective" for the roadblock was more than license checks and, in fact, was much more consistent with Hartwell's testimony that the purpose was to identify any criminal activity:

> Interstate Criminal Enforcement Unit (ICE) shall conduct License Checks/Road Blocks in an effort to assist with public safety, enforce the law, and to promote order, peace, and dignity in Laurens County, Georgia. During the course of the License Checks/Road Blocks officers from the ICE unit shall be on alert for illegal activity.

Finally, Major Knight is identified on the authorization as "Implementing Traffic Supervisor for Road Block/License Check."

The roadblock was held on both April 18 and 19, 2002. Hartwell's unit, the ICE, participated in the roadblock, together with the Laurens/Dublin drug unit, several probation officers, the Department of Corrections K-9 unit, and several deputies from Laurens County. The K-9 unit was present to check for drugs. Hartwell testified that he and another officer were trained in who should be given field checks for intoxication.

The checkpoint was located at the end of an exit ramp from Interstate 16 and was identified by signs on the interstate as a "DUI/drug check point." The officers placed decoy patrol cars with lights flashing on the interstate in an attempt to cause those who were concerned about a checkpoint to take the exit. In Hartman's estimation, 75 percent of the people taking the exit fell for the ruse. At the end of the ramp, officers stopped all cars, and most motorists were delayed for less than a minute. The officers followed internal guidelines for executing the roadblock/checkpoint, but the guidelines

were not introduced into evidence. In addition to checking drivers' licenses and proofs of insurance, the officers looked for "any obvious violations, seat belt violations, open containers, anything such as that." If the officers decided that more investigation was warranted, the cars were then sent to a second area where K-9 searches could be performed to detect the presence of drugs, and where DUI tests could be performed.

On April 18, 2002, Morgan was riding in a car driven by a woman named Williams. Williams took the exit then stopped about one quarter of the way up the ramp. She appeared to be trying to go back down the ramp when officers yelled at her to stop. She then proceeded to the top of the ramp and stopped at the roadblock. During that time, Hartwell saw Morgan and Williams engage in a lot of movement inside the car. Williams produced her license and proof of insurance, and Hartwell asked her why she took the exit. Williams replied that she needed gas, but Hartwell saw that the car's tank was three quarters full. Williams was also acting "extremely nervous, very nervous," so Hartwell told her to proceed to the area where the K-9 drug unit was located. Williams initially turned the wrong way, and officers had to run after her and stop the car, whereupon Williams finally drove to the K-9 area. A dog alerted on the vehicle and 122 pounds of marijuana were found in the trunk. Williams did not receive any traffic citations and she did not exhibit any signs of intoxication at the roadblock. Morgan and Williams were charged with trafficking in marijuana.

On the motion to suppress, the trial court found as a matter of fact "[t]he decision to conduct the roadblock was made by Sergeant Hartwell with approval by Major Carson Knight." The court found as a matter of law that the roadblock satisfied the five-part test stated in *LaFontaine v. State*, 269 Ga. 251 (497 SE2d 367) (1998). But the court held that "the decision to conduct the road block made by supervisory personnel was set for a different day." The court concluded that "the Court may not presume that supervisory personnel, rather than officers in the field, made the decision to implement the road block on April 18, 2002," and it granted Morgan's motion to suppress.

On appeal, the State contends that it is obvious that the decision to implement the roadblock on both days was not made by officers in the field because the roadblock took so much planning and coordination between several law enforcement agencies. The State notes that Hartwell testified that the roadblock was approved for both days and argues that the authorization form must contain an inadvertent mistake or typographical error.

We find that this roadblock was legally problematic for two reasons and uphold the trial court's decision for the reason stated therein.

> When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that a substantial basis existed for the decision. Evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility of the witnesses are adopted unless they are clearly erroneous. Further, because the trial court is the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if any evidence supports them. [Cit.]

*State v. Ayers*, 257 Ga. App. 117-118 (570 SE2d 603) (2002).

> A police roadblock is constitutional provided that, among other things, the decision to implement the roadblock was made by supervisory personnel rather than officers in the field. Moreover, the supervisory officers must have a valid primary purpose for the roadblock other than merely seeking to uncover evidence of ordinary criminal wrongdoing [such as drug trafficking]. In establishing the lawfulness of a roadblock, the state has the burden of presenting some admissible evidence, testimonial or written, that supervisory officers decided to implement the roadblock, decided when and where to implement it, and had a legitimate primary purpose for it.

(Footnotes omitted.) *Blackburn v. State*, 256 Ga. App. 800-801 (570 SE2d 36) (2002).

The United States Supreme Court has made clear that a roadblock/checkpoint contravenes the Fourth Amendment if it is established for the primary purpose of detecting evidence of ordinary criminal wrongdoing, such as illegal drug activities. *City of Indianapolis v. Edmond*, 531 U. S. 32, 41-42 (III) (121 SC 447, 148 LE2d 333) (2000). Rather, that Court has limited the grounds under which a roadblock may be authorized to those where there are " 'special needs, beyond the normal need for law enforcement.' " Id. at 37 (II) (see list therein). Although two permissible programmatic purposes of a roadblock are verifying drivers' licenses and vehicle registrations, and sobriety enforcement, just mentioning a license or sobriety checkpoint is not sufficient to legitimize a plan that has as its aim ordinary criminal wrongdoing. Id. at 38-39 (II), 46-47 (III). The Supreme Court has explained that in looking to the programmatic purpose, "we consider all the available evidence in order to determine

the relevant primary purpose." *Ferguson v. City of Charleston*, 532 U. S. 67, 81 (III) (121 SC 1281, 149 LE2d 205) (2001).

Although Sergeant Hartwell testified on direct that the purpose of the roadblock was "a license/DUI checkpoint," he unambiguously testified that the decision to implement the roadblock was a result of an influx of drug cases, and he added, "*any criminal activity* that's what we're out there for." (Emphasis supplied.)[1] The written authorization clearly indicates that the purpose of the checkpoint was general law enforcement, and the sign posted on the interstate said that it was a "DUI/drug check point." In short, all of the evidence indicates that the primary purpose of the roadblock was general law enforcement, with an emphasis on drug interdiction and DUI laws. Under these circumstances, the trial court would have been clearly erroneous if it had concluded that the roadblock was established for a proper primary purpose. Cf. *Ayers*, 257 Ga. App. at 118-119 (where officer who set up roadblock testified that the purpose was general law enforcement, the trial court correctly suppressed evidence).

Nevertheless, the trial court focused on the fact that according to the written authorization, the roadblock was not planned for April 18, the day Morgan was stopped. The trial court was authorized to disbelieve any contradictory evidence from Hartwell regarding the authorized time for the roadblock, given that Hartwell agreed that the document in question was the applicable authorization form. That form indicated that the officers were only authorized to perform the roadblock on the 19th. Thus, the trial court's finding that the roadblock was not authorized for the 18th was not clearly erroneous. Without supervisory approval of the roadblock that led to Morgan's stop, the roadblock is not sound under the Fourth Amendment. See *Edmond*, 531 U. S. at 41-42; *LaFontaine*, 269 Ga. at 253. Distinguishable are cases where supervisory personnel decided to implement a roadblock but left the field officers some discretion to choose the exact time and location. See *Perdue v. State*, 256 Ga. App. 765, 768 (578 SE2d 456) (2002) (noting that United States Supreme Court precedent appears to require that location of roadblock be determined by supervisory personnel). Compare *Hardin v. State*, 277 Ga. 242, 244 (3) (587 SE2d 634) (2003) (not necessary that supervisory personnel determine precise location of roadblock).

*Judgment affirmed. Ruffin, P. J., and Eldridge, J., concur.*

DECIDED JUNE 9, 2004.

---

[1] *Edmond* also makes clear that it is appropriate to inquire into the supervisory programmatic purpose of the roadblock even if the roadblock is implemented in a way consistent with a valid purpose, such as a license check. *Edmond*, 531 U. S. at 45-46 (III).

Ralph M. Walke, District Attorney, Terry F. Holland, Assistant District Attorney, for appellant.

Stephen R. Yekel, for appellee.