A06A1586. GIACINI v. THE STATE.
(636 SE2d 145)

MIKELL, Judge.

On November 12, 2004, following a jury trial in the Superior Court of Fulton County, Scott Giacini was convicted of trafficking in methamphetamine,[1] a felony (Count 1); possession of MDMA (Ecstasy),[2] a felony (Count 2); and driving with a suspended license,[3] a misdemeanor (Count 3). He was sentenced to ten years to serve on Count 1, two years on Count 2 and twelve months on Count 3, each sentence to be served concurrently. The trial court denied Giacini's amended motion for a new trial, and he appeals, enumerating as error (1) the trial court's denial of his motion to suppress evidence gathered at an allegedly illegal police roadblock; (2) the trial court's failure to recognize the jury's verdict on the lesser included offense of possession under Count 1; (3) the ineffectiveness of Giacini's trial counsel in not objecting to the judge's failure to accept the jury's verdict on the lesser included offense of possession under Count 1; and (4) the insufficiency of the evidence as to the charge of methamphetamine trafficking. We find no error and affirm.

The record shows that, at approximately 3:00 a.m. on March 26, 2004, Giacini stopped his vehicle at a roadblock set up for DUI enforcement at Juniper and 5th Streets in Atlanta. S. J. Ormond, an Atlanta police officer with 15 years experience, approached the vehicle and asked Giacini for his driver's license and proof of insurance. Giacini did not produce these for inspection, but instead handed

---

[1] OCGA § 16-13-31.
[2] OCGA § 16-13-30.
[3] OCGA § 40-5-121.

over his United States passport. When Ormond checked the information on Giacini's passport, both by computer and by radio, he found that Giacini's driver's license had been suspended for DUI. Ormond then checked with Lieutenant Charles, his supervisor at the roadblock, who authorized Ormond to arrest Giacini for driving with a suspended license and impound his vehicle. Upon searching Giacini's person incident to his arrest, Ormond found a pill containing MDMA; upon searching the vehicle in connection with impounding it, he found a plastic bag containing more than 28 grams of methamphetamine. This evidence, obtained at the roadblock, formed the basis for Giacini's convictions below.

1. Giacini contends that the roadblock was unconstitutional because (a) the decision to implement the roadblock was made by officers in the field rather than supervisory personnel, and (b) the primary purpose of the roadblock was an impermissible one of general crime prevention; therefore, Giacini argues that the trial court erred in denying his motion to suppress the evidence seized at the roadblock. We disagree.

In order for a police roadblock to be valid in Georgia, the record must reflect "that the decision to implement the checkpoint in question was made by supervisory officers and not officers in the field *and* that the supervisors had a legitimate primary purpose. The phrase 'decision to implement' includes deciding to have this roadblock, and where and when to have it."[4] We note that,

> [i]n ruling on a motion to suppress, the trial court sits as the trier of fact, and the court's findings are analogous to a jury verdict and will not be disturbed when the record contains any evidence to support those findings. When reviewing a trial court's ruling on a motion to suppress, the evidence must be construed most favorably toward the court's findings unless those findings are clearly erroneous. Further, in reviewing the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial.[5]

So considered, the evidence adduced below amply supports the trial court's finding that the roadblock was implemented for a valid

---

[4] (Footnote omitted; emphasis in original.) *Baker v. State*, 252 Ga. App. 695, 702 (1) (556 SE2d 892) (2001) (whole court). *Baker* restated the five-part test set out in *LaFontaine v. State*, 269 Ga. 251, 253 (3) (497 SE2d 367) (1998). In this appeal, only the first part of the test is in issue.

[5] (Citations and punctuation omitted.) *McCray v. State*, 268 Ga. App. 84 (601 SE2d 452) (2004).

purpose at the supervisory or "programmatic" level.[6] Testifying at the hearing on the motion to suppress was William E. Charles, a lieutenant with 19 years experience in the Atlanta Police Department, who was watch commander in charge of operations of the Zone 5 Precinct on the morning shift at the time of Giacini's arrest. Charles testified that he implemented the roadblock at which Giacini was stopped; that he determined both the time and the place of the roadblock; that his purpose in implementing this roadblock was "to check for drunk drivers and for people with suspended driver['s] license and with no insurance on their vehicles"; and that he chose this location because "[w]e have a lot of traffic accidents on the morning watch in this area involving drunk drivers." Charles also testified that, under department policy, supervisors have to make the call to have a roadblock; that, as a lieutenant, he was such a supervisor; and that, as a supervisor, he had received training concerning roadblocks, both upon reaching the rank below lieutenant and again upon reaching the rank of lieutenant. He stated that his superiors had not taken part in the decision to implement this particular roadblock, but that he followed the protocols for roadblocks set forth in the department's field manual regarding identification of officers, safety measures, and traffic control at the site of the roadblock; and that he was present at the roadblock that night in his capacity of supervisor.

The uncontradicted testimony of the supervisor that he was a supervising officer authorized to implement roadblocks is sufficient to establish the fact.[7] Further, the mere fact that Charles was present at the scene of the roadblock does not deprive him of "supervisory" status, where, as here, he was present in a supervisory capacity.[8]

Giacini's reliance on *Thomas v. State*[9] is misplaced. There, a field officer, acting without any specific authorization to conduct roadblocks, and after talking with fellow field officers at a convenience store, decided on the spur of the moment to implement a roadblock, in which he actively participated along with the other field officers.[10] The case at bar differs on its facts from *Thomas*. Although Giacini

---

[6] *Hobbs v. State*, 260 Ga. App. 115, 116 (1) (579 SE2d 50) (2003). The somewhat enigmatic phrase "programmatic level" originated in Justice O'Connor's opinion in *City of Indianapolis v. Edmond*, 531 U. S. 32, 48 (III) (121 SC 447, 148 LE2d 333) (2000).

[7] *Harwood v. State*, 262 Ga. App. 818, 820 (1) (a) (586 SE2d 722) (2003). See also *Ross v. State*, 257 Ga. App. 541, 542 (1) (573 SE2d 402) (2002).

[8] See, e.g., *Harwood*, supra (supervisor did not act as "field officer" by attending roadblock, where supervisor did not himself screen, search or otherwise interact with motorists); *Ross*, supra (implementing officer testified that he was present at the scene as supervisor, not as a field officer participating in the roadblock).

[9] 277 Ga. App. 88 (625 SE2d 455) (2005).

[10] Id. at 90-92.

asserts that the decision to hold a roadblock was a snap decision made at 2:00 a.m., when the roadblock was implemented, the evidence brought out at the hearing does not support this contention. Charles testified that he personally examined the proposed locale of the roadblock before it occurred, and that the roadblock was coordinated with and involved officers from another unit (the DUI task force), indicating that the roadblock was planned in advance.

Further, according to Charles, the purpose of the roadblock was to detect drunk drivers, to check driver's licenses, and to check for valid insurance. Such a purpose has long been considered a valid purpose for a traffic roadblock.[11] Giacini contends that § 1.8.0 of the Atlanta Police Department's Field Manual[12] set forth an invalid purpose for roadblocks ("to prevent, deter, and detect crime"), and therefore this roadblock is invalid. In ruling on Giacini's motion to suppress, however, the trial court found that the actual purpose of this roadblock was as stated by the supervisor implementing it,[13] and the trial court's findings will not be disturbed if there is any evidence to support them.[14] The direct testimony of Charles, corroborated by the participation of the DUI enforcement officers, supports the trial court's ruling, and we will not disturb it.

2. Giacini's second and third enumerations of error concern whether the jury found him guilty of the lesser included offense of possession as to Count 1, thereby foreclosing a conviction on the greater charge, trafficking in methamphetamine; and whether his counsel's assistance was ineffective in connection with the publication of the jury's verdict.

The record shows that the judge charged the jury concerning the lesser included offense of possession of methamphetamine, as well as concerning the form of the verdicts. The jury was not, however, given a verdict form to take with them into the jury room. During their deliberations, the jury sent the judge a note which indicated that they had reached unspecified "unanimous decisions" on the suspended license charge (Count 3), the MDMA possession charge (Count 2), and

---

[11] E.g., *Carson v. State*, 278 Ga. App. 501 (629 SE2d 487) (2006) (DUI enforcement a valid purpose); *Overton v. State*, 270 Ga. App. 285, 286 (606 SE2d 306) (2004) (roadblock valid where authorized "to look for DUI drivers, seat belt violations, defective equipment, and traffic law violations"); *State v. McMillan*, 269 Ga. App. 369 (604 SE2d 233) (2004) (checking licenses and insurance a valid purpose).

[12] According to testimony at trial, the Field Manual was no longer in effect as of July 2004.

[13] See *Wrigley v. State*, 248 Ga. App. 387, 390 (2) (546 SE2d 794) (2001) (roadblock implemented as part of department-wide operation to rid the streets of crime ruled valid where primary purpose of roadblock itself was limited to checking for driver's licenses and insurance cards). See also *State v. Ayers*, 257 Ga. App. 117, 119 (570 SE2d 603) (2002) (*Wrigley* distinguished where evidence showed that primary purpose of roadblock was "general law enforcement").

[14] *McCray*, supra.

the lesser included offense of methamphetamine possession, but that they were undecided as to the trafficking charge. The judge then asked the jury to inform the court of the verdicts that they had reached.

The jury then presented the following verdicts, signed, dated and written on the back of the indictment: Count 1: "No verdict." Count 2: "Guilty." Count 3: "Guilty." The trial court accepted the verdicts as to Counts 2 and 3; however, the judge found that no verdict had been reached as to Count 1 and instructed the jury to continue to deliberate as to the trafficking charge and the lesser included offense of possession. The jury eventually returned with a verdict of guilty as to the trafficking charge. Counsel for the defense made no objections during this phase of the trial.

Relying on *Cantrell v. State*,[15] Giacini contends that the judge rejected a verdict on the lesser included charge of methamphetamine possession, a verdict which would have acquitted him of the more serious charge of methamphetamine trafficking. He also contends that his counsel acted in ignorance and error and deprived him of effective assistance of counsel by not seeking inquiry of the jury as to the methamphetamine possession charge, and by not asking for further instructions to the jury concerning the lesser included offense.

We find this argument without merit. *Cantrell* reiterates the rule that "when an indictment charges an offense, and the jury returns a verdict of guilty on a lesser included offense, the verdict operates as an acquittal of the greater offense[; t]hus, . . . further deliberations are precluded."[16] Because the *Cantrell* jury presented a written verdict to the court, finding the defendant guilty of the lesser offense of possession, the court erred in requiring the jury to engage in further deliberations.[17] In contrast, in the case at bar, although the jury indicated that they had reached an unspecified agreement as to the lesser included offense under Count 1, nonetheless, when the judge asked them to state their verdict, the jury clearly indicated that they were not decided with regard to Count 1. At that point, it was entirely appropriate for the judge to require them to continue to deliberate as to Count 1.[18]

Because there was no error in connection with the publication of the verdict, it follows that Giacini's counsel did not render ineffective

---

[15] 266 Ga. 700 (469 SE2d 660) (1996).

[16] (Citations and footnote omitted.) Id. at 701.

[17] Id.

[18] See *Turner v. State*, 241 Ga. App. 431, 433-434 (2) (b) (526 SE2d 95) (1999) (physical precedent only) (*Cantrell* distinguished where the jury's note merely indicated agreement as to the lesser offense, without specifying verdict of guilty or not guilty).

assistance by failing to make any objection to the verdicts as published. "Failure to make a meritless objection cannot be evidence of ineffective assistance."[19]

3. In his fourth enumeration of error, Giacini contends that the evidence was insufficient to support his conviction for trafficking, because the passenger had equal access to the methamphetamine found in the car. After reviewing the evidence in the light most favorable to the jury's verdict,[20] we conclude that a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.[21]

According to the testimony of arresting officer Ormond, Giacini's car had one other occupant, a female, in the front passenger seat when Giacini halted at the roadblock. Upon the subsequent arrest of Giacini, Ormond told this passenger to get out of the car, because it was being impounded. Ormond testified that at no time was the passenger alone in the car; that she was permitted to remove her possessions, a purse and a gym bag, from the back of the car; that Ormond searched those items, finding no reason to detain or arrest her; that the passenger eventually walked off, without ever re-entering the vehicle; and that at no time did Ormond see the passenger make any furtive moves toward the driver's side of the car.

The evidence further showed that the car was registered in the name of "Robert Giacini"; that the keys were with the car; and that no one else besides Giacini was seen driving the car. The search of Giacini's person revealed in his front left pocket not only the pill containing MDMA described above, but also a round container which held a small clear yellow bag containing an opaque crystal substance. The subsequent search of the car revealed a larger plastic bag lying on the floor of the car, between the driver's seat and the console. This larger plastic bag contained a substance (later determined to be methamphetamine) "uniform in appearance" with the substance in the smaller bag found in Giacini's pocket, according to the testimony at trial both of Ormond and of the state's expert in forensic chemistry.

The fact that Giacini was in possession and control of the vehicle where the contraband was found gives rise to an inference that he was in possession of the contraband found inside the car.[22] This inference may be dissolved by application of the "equal access" rule, that is, by "evidence showing that a person . . . other than the . . . driver of the

---

[19] (Citations and punctuation omitted.) *Henry v. State*, 279 Ga. 615, 617 (3) (619 SE2d 609) (2005); *Glidewell v. State*, 279 Ga. App. 114, 123 (7) (c) (630 SE2d 621) (2006) (whole court).

[20] *Visser v. State*, 237 Ga. App. 798, 799 (2) (516 SE2d 840) (1999).

[21] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[22] *Causey v. State*, 274 Ga. App. 506, 507 (618 SE2d 127) (2005).

automobile had equal access to contraband found in the automobile."[23] Whether the evidence suffices to rebut the inference of possession is a question properly determined by the jury.[24] Here, the evidence showed that, at all relevant times, Giacini was in the car with the passenger and that the passenger was never alone in the car. Thus, the jury was authorized to find that Giacini possessed the contraband in the car, either solely or jointly.[25]

Further, the equal access rule "applies only where the sole evidence of possession of contraband found in the vehicle is the defendant's ownership or possession of the vehicle."[26] Here, the fact of Giacini's possession of the car is not the sole evidence linking him to the methamphetamine found next to the driver's seat; there is also the fact that Giacini had in his pocket at the time of his arrest a "crystal-like" substance that "looked just like" the methamphetamine found in the car. The evidence was amply sufficient to authorize any rational trier of fact to find Giacini guilty beyond a reasonable doubt of trafficking in methamphetamine.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED SEPTEMBER 1, 2006.

*Sharon L. Hopkins*, for appellant.
*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Assistant District Attorney*, for appellee.

---

[23] (Footnote omitted.) Id.
[24] Id. at 508. Accord *Blue v. State*, 275 Ga. App. 671, 674 (2) (621 SE2d 616) (2005); *Sears v. State*, 244 Ga. App. 718, 719 (536 SE2d 605) (2000).
[25] *Hill v. State*, 253 Ga. App. 658, 660 (1) (560 SE2d 88) (2002).
[26] (Punctuation and footnote omitted.) *Causey*, supra at 507-508.