A07A2208. KELLOGG v. THE STATE.
(653 SE2d 841)

BLACKBURN, Presiding Judge.

Following a stipulated bench trial, Joseph Graham Kellogg appeals his convictions for DUI (underage per se)[1] and for underage possession of alcohol,[2] contending that the trial court erred in denying his motion to suppress evidence obtained during a roadblock and his subsequent arrest. We hold that the trial court did not clearly err in finding that the roadblock had a proper purpose, nor did the trial court clearly err in finding that the officer had probable cause to arrest Kellogg. Thus, we affirm.

> In ruling on a motion to suppress, the trial court sits as the trier of fact, and the court's findings are analogous to a jury verdict and will not be disturbed when the record contains any evidence to support those findings. Accordingly, in reviewing a ruling on a motion to suppress, we construe the evidence in a light favorable to the trial court. . . .

(Punctuation and footnote omitted.) *Bennett v. State*.[3]

So construed, the evidence shows that in May 2005, Lieutenant Tainter (a supervisory field officer with the City of Snellville Police Department), in consultation with a sergeant in the state highway patrol, determined to conduct a joint roadblock in the City of Snellville on June 18, 2005, which would involve city police, police from a neighboring county, and officers from the state highway patrol.

---

[1] OCGA § 40-6-391 (k) (1).
[2] OCGA § 3-3-23 (a) (2).
[3] *Bennett v. State*, 283 Ga. App. 581, 581-582 (642 SE2d 212) (2007).

According to Lieutenant Tainter, the primary purpose of the road-block was "[t]o check for driver's licenses, insurance and impaired drivers." Secondary purposes included checking vehicle tags, observing seat belt use, and noticing whether the condition of the vehicle was safe.

At the roadblock on June 18, Lieutenant Tainter acted as the primary supervisor overseeing the officers on site. All vehicles were stopped, the only delay to vehicles was less than 30 seconds before they met briefly with an officer, marked police vehicles with emergency lights activated were at the site, cones and signage alerted drivers that this was a safety checkpoint, and properly trained and uniformed officers conducted the roadblock.

During the roadblock, a City of Snellville police officer approached Kellogg, who was driving a vehicle with passengers, and asked for his driver's license. Detecting the strong odor of an alcoholic beverage coming from within the vehicle, the officer asked Kellogg to pull off to the side so that the officer could investigate the possibility that Kellogg had been drinking. After Kellogg exited the vehicle, the officer noticed that Kellogg's eyes were bloodshot and watery, and that Kellogg had an odor of alcohol on his breath. Kellogg admitted to having consumed one beer earlier, and the officer determined from Kellogg's driver's license that Kellogg was under 21 years of age. The officer received Kellogg's consent to perform an alco-sensor test, which showed positive. The officer arrested Kellogg for DUI without performing any field sobriety tests. After receiving the appropriate implied consent notice,[4] Kellogg consented to a breath test, which resulted in 0.033 and 0.037 readings.

Indicted for DUI (underage per se), DUI (less safe), and underage possession of alcohol, Kellogg moved to suppress the evidence obtained at the roadblock and after his arrest, arguing that the roadblock was unconstitutional and that the officer lacked probable cause to arrest him. Following an evidentiary hearing, the trial court denied the motion to suppress. The parties stipulated to a bench trial, using the transcript from the motion to suppress hearing as the evidence for trial. The court acquitted Kellogg of the DUI (less safe) count but convicted him on the DUI (underage per se) and underage possession of alcohol counts, which convictions he appeals.

1. Kellogg first challenges the court's finding that the roadblock met constitutional standards. If there is any evidence to sustain the court's factfindings in this regard, we will affirm. *Bennett*, supra, 283 Ga. App. at 581-582.

---

[4] OCGA § 40-5-67.1 (b) (1).

In order to pass constitutional muster, a roadblock must: (1) have been implemented for a legitimate primary purpose by supervisory personnel; (2) involve stopping all vehicles; (3) result in minimal delay to motorists; (4) be clearly identified as a police checkpoint; and (5) be manned by officers sufficiently trained to determine whether motorists should be given field sobriety tests.

*Yingst v. State.*[5] Kellogg's only complaint is that the first criterion was not met, in that the State failed to establish a legitimate primary purpose for the roadblock, and in that the State failed to have the supervisory officers from the other participating jurisdictions (the county police and the state highway patrol) reaffirm Lieutenant Tainter's testimony as to the purpose for the roadblock.

(a) *The primary purpose for the roadblock was legitimate.* Noting that general law enforcement is not a valid primary purpose, see *State v. Ayers,*[6] Kellogg complains that the primary purposes identified by Lieutenant Tainter were so numerous that they necessarily devolved into an overall purpose of general law enforcement. We disagree.

It is true that for a roadblock to pass constitutional muster, "the supervisory officers must have a valid primary purpose for the roadblock other than merely seeking to uncover evidence of ordinary criminal wrongdoing." *Wright v. State.*[7] Thus, the State has the burden of proving that the roadblock had a "legitimate primary purpose." Id. at 393-394. See generally *Baker v. State.*[8]

Lieutenant Tainter testified that the primary purpose of the roadblock was "[t]o check for driver's licenses, insurance and impaired drivers." Secondary purposes included checking vehicle tags, observing seat belt use, and noticing whether the condition of the vehicle was safe. Even if we were to accept Kellogg's contention that observing seat belt use and checking vehicle tags were also primary purposes, there is no doubt that each of the purposes identified has been held to be a legitimate primary purpose. See, e.g., *Giacini v. State*[9] (valid primary purpose to check for drivers' licenses, insurance, and impaired drivers); *Cater v. State*[10] (roadblock upheld where "primary purpose of the roadblock was to check for driver's licenses,

[5] *Yingst v. State*, 287 Ga. App. 43, 44 (650 SE2d 746) (2007).

[6] *State v. Ayers*, 257 Ga. App. 117, 119 (570 SE2d 603) (2002).

[7] *Wright v. State*, 283 Ga. App. 393 (641 SE2d 605) (2007).

[8] *Baker v. State*, 252 Ga. App. 695, 702 (1) (556 SE2d 892) (2001).

[9] *Giacini v. State*, 281 Ga. App. 426, 428 (1) (636 SE2d 145) (2006).

[10] *Cater v. State*, 280 Ga. App. 891, 892 (1) (635 SE2d 246) (2006).

seat belts, and vehicle registrations"); *Overton v. State*[11] (roadblock upheld where primary purpose was to "look for DUI drivers, seat belt violations, defective equipment, and traffic law violations").

Kellogg's contention that the number of primary purposes identified here (allegedly five or six) was so great that the court was required to find that the true purpose of the roadblock was for general law enforcement purposes, not only lacks authority but is contradicted by at least three cases, which upheld a roadblock as constitutional, and in which the supervisory officer had identified numerous primary purposes. See *Wright*, supra, 283 Ga. App. at 394 ("the purpose of the roadblock was to check for driver's licenses, proof of insurance, seat belt violations, driver impairment and vehicle safety compliance"); *McCray v. State*[12] (main mission of checkpoint was highway safety, which included asking for license and proof of insurance, and checking for expired tags, seat belt and child restraint violations, and impaired drivers); *Buell v. State*[13] (roadblock was to check for safety violations by asking for driver's license and proof of insurance, looking for impaired drivers, and checking for seat belts, child restraints, defective equipment, and expired tags). The key is that a roadblock that serves as a highway safety checkpoint is valid in its primary purpose, even if the safety violations for which the officers are looking are several. See *Hobbs v. State*[14] (valid purpose if roadblock was "implemented to ensure roadway safety rather than as a constitutionally impermissible pretext aimed at discovering general evidence of ordinary crime"). Notably, even the signage announcing this roadblock referred to it as a "safety check point." Cf. *State v. Morgan*[15] (court considered signage in determining purpose).

(b) *The evidence from Lieutenant Tainter was sufficient.* Kellogg then complains that only Lieutenant Tainter testified as to the purpose of the roadblock, even though two other law enforcement jurisdictions (a neighboring county police force and the state highway patrol) participated in the roadblock. Kellogg would require the State to present consistent testimony from supervisory officers from the other two police forces.

There is simply no authority for Kellogg's position. Indeed, the law only requires that *some* admissible evidence, whether testimonial or written, show "that supervisory officers decided to implement the roadblock, decided when and where to implement it, and had a legitimate primary purpose for it." (Punctuation omitted.) *Yingst,*

[11] *Overton v. State*, 270 Ga. App. 285, 286 (606 SE2d 306) (2004).

[12] *McCray v. State*, 268 Ga. App. 84 (601 SE2d 452) (2004).

[13] *Buell v. State*, 254 Ga. App. 456, 457 (562 SE2d 526) (2002).

[14] *Hobbs v. State*, 260 Ga. App. 115, 116 (1) (579 SE2d 50) (2003).

[15] *State v. Morgan*, 267 Ga. App. 728, 732 (600 SE2d 767) (2004).

supra, 287 Ga. App. at 44. See *Baker*, supra, 252 Ga. App. at 701 (1). Here, Lieutenant Tainter's testimony, in which he testified that he was the primary supervisor at the roadblock and in which he addressed these matters, sufficed to meet the evidentiary requirements.

As some evidence supported the trial court's factual findings underlying its ruling, we affirm the court's ruling that the roadblock was constitutional.

2. Kellogg argues that no probable cause justified his arrest for DUI, which led to his consent to the breath test. Specifically, he claims that his bloodshot, watery eyes, his admission to drinking, the positive result from the alco-sensor test, and the officer's smelling alcohol on Kellogg's breath, did not give the officer probable cause to arrest him for DUI. Accordingly, he contends that the trial court should have suppressed the results of the breath test that took place after his arrest.

*State v. Sledge*[16] contradicts Kellogg's position:

> The test of probable cause requires merely a probability — less than a certainty but more than a mere suspicion or possibility. To arrest a suspect for driving under the influence, an officer need only have knowledge or reasonably trustworthy information that the suspect was actually in physical control of a moving vehicle, while under the influence of alcohol to a degree which renders him incapable of driving safely. And we have previously found that, even in the absence of the field sobriety tests, *the officer's observation that a suspect had bloodshot, watery eyes and exuded an odor of alcohol was sufficient to show probable cause to arrest him for driving under the influence.*

(Punctuation omitted; emphasis supplied.) See *Frederick v. State*[17] ("experienced officer's undisputed testimony that [defendant] smelled of alcohol, admitted that he had been drinking, and had glossy eyes sufficed to create probable cause for the arrest"); *Temples v. State*[18] (odor of alcohol on breath, positive reading on alco-sensor, and bloodshot, watery eyes were sufficient grounds for probable cause); *Cann-Hanson v. State*[19] (bloodshot, watery eyes and an odor of alcohol provided probable cause).

---

[16] *State v. Sledge*, 264 Ga. App. 612, 614 (591 SE2d 479) (2003).

[17] *Frederick v. State*, 270 Ga. App. 397, 398 (606 SE2d 615) (2004).

[18] *Temples v. State*, 228 Ga. App. 228, 231 (491 SE2d 444) (1997).

[19] *Cann-Hanson v. State*, 223 Ga. App. 690, 691 (1) (478 SE2d 460) (1996).

*State v. Gray*,[20] in which the trial court disbelieved the officer's testimony and ruled in favor of the defendant, and *Ricks v. State*,[21] in which the court was considering whether the evidence could sustain a conviction as opposed to the lesser finding of probable cause, are distinguishable. See *Slayton v. State*.[22]

Moreover, a close reading of the arresting officer's testimony here supports the possible inference that the officer actually was arresting Kellogg *not* for DUI (less safe)[23] but for DUI (underage per se),[24] which requires no evidence of impairment. Although the officer responded at the hearing that the arrest was for DUI (less safe), the context of his testimony suggests that his imprecise use of the term "less safe" in court in fact meant he was arresting Kellogg under the 0.02 per se DUI provision for drivers under 21 (OCGA § 40-6-391 (k) (1)), as was indeed apparent from the Uniform Traffic Citation he filled out on Kellogg. Based on this evidence, the trial court was authorized to find that the officer was in truth arresting Kellogg for DUI (underage per se), for which he had ample probable cause in light of the low per se limit, Kellogg's smelling of alcohol, Kellogg's admission to drinking, the officer's extensive experience in this area, the positive result from the alco-sensor, and Kellogg's bloodshot, watery eyes.

*Judgment affirmed. Ruffin and Bernes, JJ., concur.*

DECIDED NOVEMBER 6, 2007 — 

*Alan Mullinax, Glynn R. Stepp*, for appellant.

*Gerald N. Blaney, Jr.,* Solicitor-General, *Victoria L. Kizito, Rosanna M. Szabo, Elizabeth M. Schneider,* Assistant Solicitors-General, for appellee.

[20] *State v. Gray*, 267 Ga. App. 753, 756 (600 SE2d 626) (2004).
[21] *Ricks v. State*, 255 Ga. App. 188, 190 (1) (564 SE2d 793) (2002).
[22] *Slayton v. State*, 281 Ga. App. 650, 653 (1) (637 SE2d 67) (2006).
[23] OCGA § 40-6-391 (a) (1).
[24] OCGA § 40-6-391 (k) (1).