## A08A1460. BRITT v. THE STATE.
### (668 SE2d 461)

MILLER, Judge.

In this interlocutory appeal, Phillip Adrian Britt challenges the trial court's denial of his motion to suppress evidence seized from his car during what Britt claims was an unconstitutional police road-block. Britt further asserts that, even if the roadblock was legal, the search of his car was not. Discerning no error, we affirm.

> In considering an appeal from denial of a motion to suppress, this Court construes the evidence in favor of the trial court's ruling, and we review de novo the trial court's application of the law to undisputed facts. Additionally, we must defer to the trial court's determination on the credibility of witnesses, and the trial court's ruling on disputed facts must be accepted unless it is clearly erroneous.

(Citation omitted.) *Lindsey v. State*, 287 Ga. App. 412 (651 SE2d 531) (2007).

So viewed, the evidence at the motion to suppress hearing showed that Captain Lee Clements of the Broxton Police Depart-ment had supervisory authority to "decide when and how [the department] conduct[ed] . . . road blocks." On January 29, 2006, Captain Clements authorized a police roadblock at an intersection within the Broxton city limits, for the purpose of conducting sobriety checks and ensuring that drivers had valid licenses. The roadblock began shortly before 1:00 a.m. and ended at approximately 2:45 a.m. Captain Clements was present during the roadblock to supervise the officers conducting the same, all of whom were employed by the Coffee County Sheriff's Department.[1]

Police stopped Britt at approximately 12:47 a.m., shortly after the roadblock began. The officer who stopped Britt, Sergeant Phillip Ellis, testified that Britt approached the roadblock at a high rate of speed, even though the intersection was illuminated by two street lights and flanked by several patrol cars with their blue lights operating. Sergeant Ellis, who was trained to screen drivers at roadblocks, observed Britt's hands shaking when he produced his driver's license and registration and noticed the smell of alcohol coming from Britt's vehicle. After asking Britt to step out of the car, Sergeant Ellis performed an alco-sensor test which indicated that there was no alcohol in Britt's system. In response to Sergeant Ellis's request, Britt consented to a search of his person and vehicle. Inside

---

[1] At least one officer manning the roadblock was employed by both the Broxton Police Department and the Coffee County Sheriff.

the vehicle, police found methamphetamine and Britt was charged with violating the Georgia Controlled Substances Act, OCGA § 16-13-30. After the trial court denied his motion to suppress the evidence seized during the search of his car, Britt filed an application for interlocutory appeal, which we granted.

1. Britt first asserts that the search of his car resulted from an unconstitutional roadblock.

> For a police roadblock to satisfy the Fourth Amendment, the State must show that (1) the decision to implement the roadblock was made by supervisory personnel at "the programmatic level," rather than officers in the field, for a legitimate primary purpose; (2) all vehicles, rather than random vehicles, are stopped; (3) the delay to motorists is minimal; (4) the roadblock is well identified as a police checkpoint; and (5) the screening officer has adequate training to make an initial determination as to which motorists should be given field sobriety tests.

(Citation omitted.) *Gonzalez v. State*, 289 Ga. App. 549, 550 (657 SE2d 617) (2008).

On appeal, Britt challenges the trial court's finding that the roadblock satisfied the first two of these criteria. We find, however, that the evidence supports the trial court's ruling on the validity of the roadblock.

(a) To satisfy the first requirement for a constitutional roadblock, the State had to prove "that the roadblock was ordered by a supervisor and implemented to ensure roadway safety rather than as a constitutionally impermissible pretext aimed at discovering general evidence of ordinary crime." (Citation and punctuation omitted.) *Gonzalez*, supra, 289 Ga. App. at 550. "[A] roadblock/checkpoint contravenes the Fourth Amendment if it is established for the primary purpose of detecting evidence of ordinary criminal wrongdoing, such as illegal drug activities." (Citation omitted.) *State v. Morgan*, 267 Ga. App. 728, 731 (600 SE2d 767) (2004).

(i) Britt asserts that the roadblock in this case was not implemented for a proper purpose. In support of this claim, Britt cites the testimony of Sergeant Ellis who, in response to a question from defense counsel, agreed that his "purpose out there" was not just to look for DUIs, but "generally to enforce the law." In determining whether a roadblock was initiated for a legitimate, primary purpose, however, the court should look to the testimony of the supervisory officer as to the roadblock's purpose, rather than to the testimony of the field officers. See *Baker v. State*, 252 Ga. App. 695, 699 (556 SE2d 892) (2001). Here, Captain Clements testified that the purpose of the

roadblock was to perform a driver's license and sobriety check. "Such a purpose has long been considered a valid purpose for a traffic roadblock." (Footnote omitted.) *Giacini v. State*, 281 Ga. App. 426, 429 (1) (636 SE2d 145) (2006). See also *Wrigley v. State*, 248 Ga. App. 387, 390 (2) (546 SE2d 794) (2001). This testimony was sufficient to support the trial court's conclusion as to the legitimate purpose of the roadblock. *Kellogg v. State*, 288 Ga. App. 265, 268 (1) (b) (653 SE2d 841) (2007). The mere fact that Sergeant Ellis, a field officer, recognized that he was tasked with general enforcement of the law while manning the roadblock did not require the trial court to disregard the direct testimony of the supervisory officer as to the roadblock's purpose. See *Baker*, supra, 252 Ga. App. at 699.

(ii) Britt also contends that the State failed to show that the roadblock was authorized by supervisory personnel, and offers three arguments in support of this assertion. First, Britt claims that the evidence failed to show that Clements had supervisory authority over Coffee County Sheriff's deputies. This assertion, however, is refuted by the testimony of Captain Clements and Sergeant Ellis, that the field officers, though employed by the Coffee County Sheriff, acted at Clements's direction and not at their own initiative. That testimony, standing alone, was sufficient to establish that Clements was exercising supervisory authority over the Coffee County Sheriff's deputies working at the roadblock. See *Giacini*, supra, 281 Ga. App. at 428 (1); *Kellogg*, supra, 288 Ga. App. at 268 (1) (b) (testimony of a single supervising officer sufficient to establish the legitimate nature of a roadblock).

Britt further claims that Clements never informed the deputies of the roadblock's purpose and that this failure demonstrated a lack of supervision over the officers conducting the traffic stops. Again, however, this argument is directly contradicted by the testimony of Captain Clements, that he met beforehand with the other officers to discuss, among other things, what the officers were to check for when vehicles stopped at the checkpoint — i.e., to explain to those officers the purpose of the roadblock. This testimony is sufficient to support the trial court's conclusion that the roadblock was established by supervisory personnel, as opposed to officers in the field. See *Kellogg*, supra, 288 Ga. App. at 268 (1) (b) (Where several law enforcement jurisdictions participate in a roadblock, "the law only requires that *some* admissible evidence, whether testimonial or written, show that supervisory officers decided to implement the roadblock, decided when and where to implement it, and had a legitimate primary purpose for it.") (citations and punctuation omitted).

Finally, Britt claims that he was stopped at the roadblock outside the time period Captain Clements designated for the same, meaning

that the roadblock was not authorized at the time of his stop. See *Morgan*, supra, 267 Ga. App. at 732 (holding that where a roadblock was authorized for a certain date, but implemented the day before, the roadblock was implemented without supervisory approval and was therefore illegal). Again, we disagree.

Captain Clements testified that he authorized the roadblock "a little bit before one a.m." Sergeant Ellis testified that Britt was stopped at approximately 12:47 a.m. Thus, the evidence showed that the supervisory officer was on the scene at the roadblock's inception,[2] that the field officers did not commence the roadblock on their own initiative, and that the time at which Britt was stopped was generally consistent with the time for the roadblock authorized by the supervisory officer. Accordingly, even accepting that Britt was stopped at 12:47 a.m., he was not stopped at a roadblock unauthorized by supervisory personnel.

(b) A constitutionally permissible roadblock requires that police stop all vehicles approaching the checkpoint, rather than randomly selecting which vehicles to stop. *LaFontaine v. State*, 269 Ga. 251, 253 (3) (497 SE2d 367) (1998). Britt claims that the roadblock at issue failed to meet this requirement and was therefore illegal. To support this assertion, Britt cites the testimony of his friend, Hank Davenport, who was following Britt's car in another vehicle. Davenport testified that he saw at least one other vehicle being "waved through" the roadblock without being required to stop. Davenport further admitted, however, that the car he saw being waved through "was already there" when he reached the roadblock. Thus, the vehicle in question could have been at the end of its stop when Davenport first saw it. Davenport also acknowledged that his own vehicle was required to stop when he reached the checkpoint. Accordingly, Davenport's testimony is not necessarily inconsistent with that of Captain Clements, who stated that he was present at the scene for the duration of the roadblock and that all vehicles were required to stop. Moreover, to the extent that Davenport's testimony could be viewed as inconsistent with Clements's testimony, the trial court was permitted to resolve any factual conflicts in favor of the State. See *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

2. We find no merit in Britt's second enumeration of error, that even if the roadblock was valid, the ensuing search of his car was not the product of a properly obtained consent.

---

[2] See *Harwood v. State*, 262 Ga. App. 818, 820 (1) (a) (586 SE2d 722) (2003) ("[t]he fact that the officer who ordered the roadblock also attended it does not mean that the roadblock was not implemented at the programmatic level") (punctuation and footnote omitted).

"The State has the burden of proving the validity of a consensual search and must show the consent is given voluntarily. The consent is not voluntary if it is the result of duress or coercion, express or implied." (Citations and punctuation omitted.) *Corley v. State*, 236 Ga. App. 302, 305 (1) (b) (512 SE2d 41) (1999). Sergeant Ellis testified that Britt gave officers permission to search his vehicle, that no force was involved in obtaining his consent, that Britt understood the officer was asking for permission to search, and that he did not withdraw his permission to search. In light of this unrefuted testimony, the trial court was authorized to conclude that Britt's consent was freely given. See *Hardin v. State*, 277 Ga. 242, 244 (3) (587 SE2d 634) (2003).

Britt nevertheless claims that his consent to search was invalid, because it was obtained after he had been detained for an unreasonable period of time. We disagree. Under Georgia law, an officer may question a motorist during a traffic stop about any subject and may ask for consent to search, as long as the questioning does not unreasonably prolong the detention. See *Salmeron v. State*, 280 Ga. 735, 736 (1) (632 SE2d 645) (2006) ("If a driver is questioned and gives consent while he is being lawfully detained during a traffic stop, there is no Fourth Amendment violation.") (citation omitted); *Chang v. State*, 270 Ga. App. 814, 816 (608 SE2d 283) (2004) ("once a vehicle is lawfully stopped, the officer is allowed to ask for the driver's consent to search the car") (citation omitted). Here, the trial court could reasonably infer from Sergeant Ellis's testimony that he asked Britt for permission to search his car immediately after completing the sobriety test, and that therefore, the request was not made following an unreasonably long detention of Britt. "Only when an officer continues to detain a subject after the conclusion of the traffic stop and to interrogate him does the officer exceed the scope of a permissible investigation of the initial traffic stop." (Citation omitted.) *State v. Johnson*, 282 Ga. App. 102, 105 (637 SE2d 825) (2006). See also *Anderson v. State*, 265 Ga. App. 146, 150-151 (592 SE2d 910) (2004) (request for consent to search, in and of itself, does not constitute continued detention and questioning). While the sergeant could not recall if he had returned Britt's documents at the time he asked for consent to search, "as a matter of Georgia law, it does not matter whether the request to search comes during the traffic stop or immediately thereafter." (Footnotes omitted.) *Hayes v. State*, 292 Ga. App. 724, 730 (2) (e) (665 SE2d 422) (2008) (holding that officer's request to search made 30 seconds after issuing a warning ticket did not unreasonably prolong the detention). Accordingly, the trial court was entitled to conclude that the officer's request for consent to search did not unreasonably prolong Britt's detention.

For the reasons set forth above, we affirm the trial court's denial of Britt's motion to suppress evidence obtained during law enforcement's search of his car.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 3, 2008 —
RECONSIDERATION DENIED OCTOBER 21, 2008 — 

*Patrick S. Ferris*, for appellant.

*Richard E. Currie, District Attorney, John A. Rumker, Assistant District Attorney*, for appellee.