A09A0743. SUTTON v. THE STATE.
(678 SE2d 564)

MILLER, Chief Judge.

A DeKalb County jury convicted David A. Sutton of one count of driving under the influence of alcohol to the extent he was a less safe driver (OCGA § 40-6-391 (a) (1)) and one count of failing to use a safety belt in a passenger vehicle (OCGA § 40-8-76.1 (b)). Sutton appeals from the judgment of conviction, arguing, by his three enumerations of error, that the trial court erred in denying his motion to suppress because the roadblock where he was stopped lacked a valid primary purpose and the stop of his vehicle therefore constituted an unlawful seizure. Discerning no error, we affirm.

In considering an appeal from a denial of a motion to suppress, this Court construes the evidence in favor of the trial court's ruling, and we review de novo the trial court's application of the law to undisputed facts. Additionally, we must defer to the trial court's determination on the cred-

---

ibility of witnesses, and the trial court's ruling on disputed facts must be accepted unless it is clearly erroneous.

(Citation omitted.) *Coursey v. State*, 295 Ga. App. 476 (672 SE2d 456) (2009).

At the motion to suppress hearing, Sergeant L. M. Cutter of the DeKalb County Police Department testified that at approximately 2:25 a.m. on April 27, 2006, DeKalb County police were conducting a "roadblock safety check," which had been authorized by Sergeant Cutter, at the intersection of Eastland Road and Custer Avenue. The roadblock was well identified by 12 or 13 police vehicles along the roadway with their blue lights on. Officers stopped all vehicles approaching the roadblock and had been instructed to check the driver's license, insurance, tag, and seat belts, and drivers who could provide all of these things were free to leave. Drivers were delayed briefly, i.e., for less than five minutes. The prosecutor asked Sergeant Cutter: "And was that [the delay] . . . to check for their licenses?," and Sergeant Cutter replied: "Yes." Shortly thereafter, the prosecutor asked: "Now I think you may have testified to this earlier, but what was your purpose for this roadblock? What were you asking for? What were you checking on?" Sergeant Cutter responded: "Driver's license, insurance, make sure the driver[s] have valid tags, also seat belts." The prosecutor then concluded his direct examination.

On cross-examination, Sutton's counsel asked Sergeant Cutter: "If I understand what you're telling us, is that the means of implementing the roadblock is you taught your officers to check driver's license, check insurance, check the tag, and check seat belts?" Sergeant Cutter responded affirmatively. Defense counsel then asked Sergeant Cutter why he had chosen to establish a roadblock in that particular area, and Sergeant Cutter responded that citizens had indicated a desire for a greater police presence, "and that's just one of the ways we . . . let them know that we're in the area." In response to defense counsel's leading question, Sergeant Cutter conceded that "one of the purposes" of the roadblock was to "show the residents in the area that you're present and that you're enforcing the laws." Defense counsel subsequently asked Sergeant Cutter if there was a "particular purpose for this roadblock," and Sergeant Cutter responded: "Besides what I stated earlier, no." In response to questions about whether the roadblock was a DUI check, Sergeant Cutter further stated: "[T]he best way I can explain it is pretty much like I stated earlier, when we stop drivers and ask for driver's license, insurance, tag and seat belt, if the officer notices anything other than that, then it was further investigated." Continuing to press the issue, the prosecutor engaged

YALE LAW LIBRARY

in the following colloquy with Sergeant Cutter:

Q. Okay. But, I mean, and I know you and I talked about purpose versus means of implementation, what was the phrase that you used?

A. Initially, I used the phrase crime suppression.

Q. Crime suppression. All right. So to be clear, and, again, I don't want to put words in your mouth, is the purpose of the roadblock crime suppression, the means of implementing it is checking the driver's license, insurance, tags, and seat belts?

A. You can look at it that way.

Q. Okay, So is that yes?

A. Yes.

On redirect, defense counsel interposed an objection when the prosecutor tried to clarify the roadblock's purpose, arguing that the prosecutor was attempting to lead the witness. The trial judge then interjected the following question: "Officer, were you there for traffic control and traffic law enforcement?," and Sergeant Cutter replied: "Yes, sir."

Defense counsel thereafter engaged in additional cross-examination and continued to try to draw a distinction between the "purpose" of the roadblock and the "means" of implementing it. The trial judge eventually intervened and asked defense counsel to move on to another subject, but before he did so, the following colloquy between defense counsel and Sergeant Cutter occurred:

Q. I'll ask you one more time, have you ever testified here today when asked what the purpose of the roadblock was, that it was just for traffic regulations?

A. No. I didn't use those words, no.

Q. Okay. Was it just for traffic regulations or was it for other things?

A. Based on what I explained to you and [the prosecutor], I told you what we were doing. We were basically checking driver's license, insurance, tags, and safety belts. If you guys interpret that differently than what I'm saying, I mean it could be interpreted many ways.

A roadblock in Georgia is valid when it meets five requirements: (1) supervisory officers decided where and when to implement it for a legitimate purpose; (2) all vehicles were

stopped; (3) the delay to motorists was minimal; (4) the operation was well-identified as a police checkpoint; and (5) the screening officer was competent to determine which motorists should be given field tests for intoxication.

(Citation omitted.) *Coursey*, supra, 295 Ga. App. at 477; see also *Gamble v. State*, 283 Ga. App. 326, 327 (3) (641 SE2d 556) (2007). On appeal, Sutton's sole contention is that the trial court erred in determining that the roadblock where he was stopped was established for a legitimate primary purpose. We disagree.

"The United States Supreme Court has made clear that a roadblock/checkpoint contravenes the Fourth Amendment if it is established for the primary purpose of detecting evidence of ordinary criminal wrongdoing, such as illegal drug activities." *State v. Morgan*, 267 Ga. App. 728, 731 (600 SE2d 767) (2004), citing *City of Indianapolis v. Edmond*, 531 U. S. 32, 41-42 (III) (121 SC 447, 148 LE2d 333) (2000). By contrast, "[r]oadblocks set up to enhance roadway safety . . . serve a legitimate primary purpose." (Citation and punctuation omitted.) *Coursey*, supra, 295 Ga. App. at 477-478 (1); see also *Kellogg v. State*, 288 Ga. App. 265, 268 (1) (a) (653 SE2d 841) (2007) ("[A] roadblock that serves as a highway safety checkpoint is valid in its primary purpose, even if the safety violations for which the officers are looking are several.") (citation and footnote omitted). Thus, it is well established that roadblocks set up for the purposes such as checking for driver's licenses, insurance, and seat belt violations are constitutionally valid. See *Coursey*, supra, 295 Ga. App. at 477-478 (1) (roadblock established to check for licenses, insurance, seat belts, and impaired drivers proper); *Gonzalez v. State*, 289 Ga. App. 549, 551 (657 SE2d 617) (2008) (same); *Cater v. State*, 280 Ga. App. 891, 892 (1) (635 SE2d 246) (2006) (roadblock permissible where primary purpose was to check for drivers' licenses, seat belts, and vehicle registrations).

Here, on direct examination, Sergeant Cutter characterized the roadblock where Sutton was stopped as a "roadblock safety check." Further, he testified repeatedly during direct and cross-examination that the roadblock was established to check for driver's licenses, proof of insurance, valid tags, and seat belt violations. In addition, in response to the trial court's questioning, Sergeant Cutter agreed the roadblock was "for traffic control and traffic law enforcement." While, in response to defense counsel's leading questions, Sergeant Cutter agreed that the roadblock's purpose was "crime suppression," nothing in Sergeant Cutter's testimony indicates that the roadblock was a pretext to discover crimes unrelated to roadway safety. Rather, the record indicates that Sergeant Cutter was concerned with crime suppression only in the sense that he believed that

conducting a roadblock would raise the profile of police in the particular area. Taking Sergeant Cutter's testimony as a whole, we conclude that the trial court did not clearly err in concluding that the primary purpose of the roadblock was related to roadway safety and checking for things such as licenses, insurance, tags, and seat belt violations, and only "ancillary to that, to show a [police] presence in the community." *Coursey*, supra, 295 Ga. App. at 476. As discussed above, such a primary purpose was constitutionally valid. As such, the trial court did not err in denying Sutton's motion to suppress evidence resulting from his stop at the DeKalb County roadblock.

For the reasons set forth above, we affirm the trial court's judgment.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED MAY 14, 2009.

*Michael M. Hawkins*, for appellant.
*Robert D. James, Jr., Solicitor-General*, for appellee.