**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 28, 2012**

# In the Court of Appeals of Georgia

A12A1511. CLARK v. THE STATE.

BRANCH, Judge.

On appeal from his conviction after a bench trial for driving under the influence (DUI), Justin Clark argues that the trial court erred when it denied his motion to suppress the results of a blood test administered after Clark was pulled over during a roadblock that he claims was illegal. Clark also asserts that the evidence establishing venue in Polk County was insufficient. We find no error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the

prosecution, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). "In reviewing a trial court's ruling on a motion to suppress, we accept the court's findings of fact unless they are clearly erroneous, and we construe the evidence most favorably to uphold the court's ruling." (Footnote omitted.) *Harwood v. State*, 262 Ga. App. 818, 819 (1) (586 SE2d 722) (2003).

So viewed, the record shows that on the morning of May 30, 2010, over Memorial Day weekend, a sergeant with the Georgia State Patrol verbally authorized a roadblock near the intersection of State Route 101 and State Route 6 in Polk County. The sergeant in charge testified that he implemented the roadblock for the purpose of checking driver's licenses, insurance, and driver sobriety. Although he was not present at the event itself, the sergeant testified that the troopers under his command frequently performed road checks and that they "kn[e]w what to do . . . as far as knowing how to check license, insurance verification, [and] sobriety." The troopers executing the roadblock had undergone training and had extensive experience in field sobriety and were authorized to involve local officers in their efforts.

The roadblock began shortly after 8 a.m. Both troopers testified that the purpose of the roadblock was to check for traffic and equipment violations as well as DUI. Two Polk County officers also participated. The officers had two marked Georgia State Patrol cars and two marked Polk County cars on each side of the three-lane road so that oncoming motorists would be alerted to the existence of the roadblock. Two uniformed officers stood in the middle lane of the three-lane road facing north and two of the same faced south. Although a report filed sometime that day indicated that the officers' blue lights had been activated, in fact, they had not been. The sergeant testified that such lights were not necessary at a daytime roadblock. The officers did not set out any cones or wear reflective vests.

When Clark stopped at the roadblock at approximately 11 a.m. and produced his license, the trooper taking the license smelled alcohol coming from the car. After Clark pulled the car over to the side of the road and stepped out, a second trooper also smelled alcohol on him. Clark admitted to consuming alcohol earlier that morning, and an alco-sensor breath test was positive. Clark, who was under 21 years old at the

time, was arrested for DUI. A blood test showed that Clark's blood-alcohol level was .074.[1]

The trial court denied Clark's motion to suppress the results of his breath and blood tests on the ground that the daylight roadblock was "well-identified as a police checkpoint for the stated and authorized purposes" of driver's license, insurance, and registration verification, seatbelt and safety compliance, and driver impairment. After a bench trial, the court found Clark guilty of less-safe DUI[2] and sentenced him to 12 months with 1 day to serve.

1. Clark argues that the roadblock was illegal under the U.S. Supreme Court's holding in *City of Indianapolis v. Edmond*, 531 U. S. 32, 37-38 (II) (121 SC 447, 148 LE2d 333) (2000), that checkpoint stops aimed only at detecting evidence of ordinary criminal wrongdoing violate the Fourth Amendment. Specifically, Clark asserts that the purpose of the roadblock was not sufficiently clear to the field officers conducting

---

[1] See OCGA § 40-6-391 (k) (1) (barring driving of "any moving vehicle" by a person under the age of 21 with a blood alcohol level of "0.02 grams or more at any time within three hours" after driving).

[2] See OCGA § 40-6-391 (a) (1) (defining less-safe DUI as driving a vehicle "[u]nder the influence of alcohol to the extent that it is less safe for the person to drive").

4

it and that the roadblock would not have been identifiable as such to motorists. We disagree.

The Supreme Court of Georgia has set out the factors to be considered in evaulating whether a roadblock is legal as follows:

> A roadblock is satisfactory where the decision to implement the roadblock was made by supervisory personnel rather than the officers in the field; all vehicles are stopped as opposed to random vehicle stops; the delay to motorists is minimal; the roadblock operation is well identified as a police checkpoint; and the screening officer's training and experience are sufficient to qualify him to make an initial determination as to which motorists should be given field tests for intoxication.

(Punctuation omitted.) *LaFontaine v. State*, 269 Ga. 251, 253 (3) (497 SE2d 367) (1998), citing *State v. Golden*, 171 Ga. App. 27, 29-30 (2) (318 SE2d 693) (1984).

> [F]or a roadblock to pass constitutional muster, the supervisory officers must have a valid primary purpose for the roadblock other than merely seeking to uncover evidence of ordinary criminal wrongdoing. Thus, the State has the burden of proving that the roadblock had a legitimate primary purpose.

(Citation, punctuation and footnote omitted.) *Kellogg v. State*, 288 Ga. App. 265, 267 (1) (a) (653 SE2d 841) (2007).

(a) In arguing that the roadblock at issue had no legitimate primary purpose, Clark makes much of the fact that one of the two troopers involved testified on cross-examination that the officers were looking not only for traffic, equipment and DUI violations but "[p]retty much any . . . violation of state law." According to Clark, this testimony shows that the checkpoint was undertaken only to uncover ordinary criminal wrongdoing and was thus illegal under *Edmund*. But this record, including the sergeant's testimony and the report completed on the day of the checkpoint, show that it was undertaken for proper purposes including not only DUI detection but also traffic and equipment violations, each of which "ha[s] been held to be a legitimate primary purpose." (Citations and footnotes omitted.) Id. at 267 (1) (a); *Buell v. State*, 254 Ga. App. 456, 457 (562 SE2d 526) (2002) (checks for driver's license, proof of insurance, impaired drivers, seat belts, child restraints, defective equipment, and expired tags did not render the roadblock's purposes overbroad).

Even assuming that the enforcing troopers misunderstood the nature of the stop, moreover, "the law only requires that *some* admissible evidence, whether testimonial or written, show that supervisory officers decided to implement the roadblock, decided when and where to implement it, and had a legitimate primary purpose for it." (Citations and punctuation omitted; emphasis in original.) *Kellogg*, supra at 268-269

6

(1) (b). Given the sergeant's testimony that a primary purpose of the stop was DUI detection, we are in no position to contest the trial court's factual conclusion that the roadblock was legitimate. Id. at 259 (1) (b) (affirming trial court's conclusion that roadblock was constitutional where "some evidence" supported that conclusion); *Wrigley v. State*, 248 Ga. App. 387, 390 (2) (546 SE2d 794) (2001) (screening officer's testimony that the "primary purpose" of the roadblock was checking for driver's licenses and insurance cards, taken with presence of DUI countermeasures team, supported the conclusion that the roadblock was legitimate).

(b) Undisputed evidence also shows that the roadblock was performed in daylight with four uniformed officers stopping each car traveling in both directions. "We find no authority for the proposition that the Fourth Amendment requires that roadblocks be identified with orange cones and that officers working there wear reflective hats," *Harwood*, supra at 821 (1) (b), and we have been shown no evidence that any driver, including Clark, misunderstood the nature of the stop. Under the circumstances of the daylight search at issue here, we are in no position to contest the trial court's factual conclusion that the roadblock was sufficiently identifiable as a police checkpoint. Id.; *Loney v. State*, 245 Ga. App. 376, 377 (537 SE2d 780) (2000) (where area of roadblock was "well-illuminated" and officers were all in uniform, the

7

evidence supported the conclusion that the roadblock was well-identified as a police checkpoint).

2. Clark also argues that the evidence was insufficient to show venue in Polk County. On the contrary, a trooper present at the scene and the sergeant in charge both testified that the roadblock was conducted on a road located in Polk County. This evidence was sufficient to sustain the trial court's conclusion that Clark was guilty of less-safe DUI in that county. *Burchette v. State*, 283 Ga. App. 271, 272 (1) (641 SE2d 262) (2007) (evidence including that underaged defendant had odor of alcohol on his person and admitted that he had consumed an alcoholic beverage "was sufficient to establish venue for possession of an alcoholic beverage by an underaged person in the county in which the officer encountered the person") (citations omitted); *Hanson v. State*, 275 Ga. 470, 471 (1), (2) (569 SE2d 513) (2002); OCGA § 40-6-391 (a) (1) (defining less-safe DUI); *Jackson*, supra.

*Judgment affirmed. Miller, P. J., and Ray, J., concur.*