**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 3, 2013**

# In the Court of Appeals of Georgia

A13A0371. THE STATE v. CONNER

DILLARD, Judge.

Jason Conner was stopped at a police roadblock and arrested for driving under the influence of alcohol. Conner thereafter moved to suppress evidence obtained as a result of the traffic stop, arguing that the roadblock was unlawful. The trial court granted Conner's motion, finding that the roadblock was indeed unlawful because it was not "well-identified as a police checkpoint." The State now appeals, arguing, *inter alia*, that the trial court erred in ruling that the roadblock was not well-identified. For the reasons set forth *infra*, we agree and reverse.

Viewed in the light most favorable to the trial court's findings and judgment,[1] the evidence shows that around 1:00 a.m. on October 28, 2012, Cobb County Police

---

[1] *See Hammont v. State*, 309 Ga. App. 395, 396 (710 SE2d 598) (2011).

Officers implemented a traffic-safety checkpoint on Shiloh Road for the purpose of examining driver's licenses, confirming compliance with seat-belt laws, and checking proof of insurance, as well as checking for other violations. The roadblock was positioned on the street between a business park and parking lot, and consisted of six patrol vehicles with flashing blue lights. Approximately ten officers wearing reflective safety vests and carrying flashlights manned the roadblock, with some assigned to ensuring that approaching motorists slowed down and others assigned to screening the motorists as they were stopped. Shortly after 3:00 a.m., Conner was stopped at the roadblock, and one of the screening officers asked to see his license. As Conner complied, the screening officer smelled an alcoholic-beverage odor on Conner's breath. Consequently, Conner was arrested on suspicion of driving under the influence of alcohol.

Thereafter, Conner was charged, via accusation, with one count of DUI less safe[2] and one count of DUI per se.[3] He timely filed a motion to suppress the evidence resulting from his detainment at the police roadblock, arguing, *inter alia*, that the roadblock was not well identified as a police checkpoint. The trial court held a

---

[2] *See* OCGA § 40-6-391 (a) (1).

[3] *See* OCGA § 40-6-391 (a) (5).

2

hearing on the motion, during which two officers gave testimony concerning the roadblock in question. The trial court ultimately granted the motion to suppress, and this appeal from the State follows.

At the outset, we note that in reviewing a trial court's decision on a motion to suppress, we construe the evidence "most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility of witnesses are adopted unless they are clearly erroneous."[4] But we review *de novo* the trial court's "application of law to the undisputed facts."[5] With these guiding principles in mind, we turn now to the State's enumeration of error.

Specifically, the State argues that the trial court's decision to grant Conner's motion to suppress constituted error because the roadblock was, in fact, well identified as a police checkpoint. We agree.

The Supreme Court of the United States has interpreted the Fourth and Fifth Amendments[6] to permit roadblocks, holding that although the stops need not be based on probable cause, they must still be conducted in a manner making them reasonable

---

[4] *Hammont*, 309 Ga. App. at 396 (punctuation omitted).

[5] *Young v. State*, 310 Ga. App. 270, 271 (712 SE2d 652) (2011).

[6] *See* U.S. Const. amend. IV & V.

3

under the Fourth Amendment.[7] The requirements for determining the constitutionality and lawfulness of a police roadblock under Georgia law are set forth in *Lafontaine v. State*,[8] which held that

> [a] roadblock is satisfactory where the decision to implement the roadblock was made by supervisory personnel rather than the officers in the field; all vehicles are stopped as opposed to random vehicle stops; the delay to motorists is minimal; the roadblock operation is well identified as a police checkpoint; and the screening officer's training and experience is sufficient to qualify him to make an initial determination as to which motorists should be given field tests for intoxication.[9]

These factors are not general guidelines, but are instead "minimum constitutional prerequisites."[10]

---

[7] *Michigan Dep't. of State Police v. Sitz*, 496 U.S. 444, 450 (110 SCt 2481, 110 LE2d 412) (1990).

[8] 269 Ga. 251 (497 SE2d 367) (1998).

[9] *Id.* at 253 (3); *see also Clark v. State*, 318 Ga. App. 873, 874-875 (734 SE2d 839) (2012) (same); *Sutton v. State*, 297 Ga. App. 865, 867-868 (678 SE2d 564) (2009) (same).

[10] *Baker v. State*, 252 Ga. App. 695, 701 (1) (556 SE2d 892) (2001).

Here, our focus is on the fourth factor of *Lafontaine*, which requires that the roadblock operation be "well identified as a police checkpoint."[11] And as previously noted, the two officers who testified at the suppression hearing explained that the roadblock was well-lit by several police vehicles and spotlights and was manned by ten officers wearing reflective vests and carrying flashlights.

Nevertheless, because the officers had different recollections regarding the presence of cones at the roadblock, the trial court found that there were no cones present at the scene, and cited their absence as a reason for granting Conner's motion. In addition, the trial court found that there were no signs identifying the roadblock. We, of course, defer to those factual findings.[12]

But regardless of the foregoing, under the facts as determined by the trial court, whether the roadblock at issue was "well identified as a police checkpoint" is a question of law and, thus, is subject to *de novo* review. And we do not agree with the trial court that the lack of signs or cones prevented the roadblock from being well identified as a police checkpoint as a matter of law.

---

[11] *Lafontaine*, 269 Ga. at 253 (3).

[12] *See Hammont*, 309 Ga. App. at 396.

To be sure, cones and signs can be relevant identifying characteristics in determining whether a roadblock was well identified.[13] Nevertheless, we have repeatedly noted the lack of any precedential authority in Georgia "for the proposition that the Fourth Amendment requires that roadblocks be identified with orange cones . . . ."[14] Similarly, we find no authority requiring roadblocks to be identified by signs. To reiterate, the roadblock here was identified by six police vehicles with their blue lights flashing and ten policemen wearing reflective vests and carrying flashlights. And this Court has previously held police roadblocks with similar identifying characteristics to be well identified as a matter of law.[15]

---

[13] *See Phillips v. State*, 287 Ga. 560, 562-63 (2) (697 SE2d 818) (2010) (identifying signs and cones as two of several factors that allowed the court to find that the roadblock was well identified); *Brent v. State*, 270 Ga. 160, 162 (2) (510 SE2d 14) (1998) (identifying cones as one of several factors of a well identified roadblock).

[14] *Harwood v. State*, 262 Ga. App. 818, 821 (1) (b) (586 SE2d 722) (2003); *see also Clark*, 318 Ga. App. at 876 (same)

[15] *See Cater v. State*, 280 Ga. App. 891, 892 (1) (635 SE2d 246) (2006) (holding roadblock was lawful when "officers wore either strike force uniforms or patrolman uniforms, some with yellow and black luminescent vests with police written on them, [and] five or six marked police cars were present with lights flashing"); *Harwood*, 262 Ga. App. at 820-21 (1) (b) (holding roadblock was lawful when police cars were parked on either side of the street with flashing blue lights, and police officers present were in uniform, some with reflective vests); *Hodges v. State*, 248 Ga. App. 295, 296 (1) (546 SE2d 54) (2001) (holding roadblock was lawful when

6

Moreover, although the trial court also based its order on testimony from one of the officers, in which he stated that he could not say whether a driver from 200 yards away would be able to discern whether the significant police presence up ahead was a roadblock or the scene of an accident, we are unaware of any precedent placing such importance on the *subjective* perception of stopped motorists as to whether they are aware of the *specific* details pertaining to the police presence (*i.e.,* that a driver be able to definitively discern that the police presence is indeed related to a checkpoint).[16] Instead, our previous decisions have used *objective* criteria in determining whether a police checkpoint is well identified.[17] What we have not done

---

"[t]he area was well lit, and police cars were placed so that their flashing rear lights could be seen by cars approaching in both directions" and the "roadblock was visible at least 500 to 700 feet before reaching the roadblock to vehicles approaching in both directions").

[16] This is not to say that a driver's objective observations of a police presence are unimportant. To the contrary, a driver's testimony about the presence of cones, signs, police cars with flashing lights, etc., may certainly be taken into account when a trial court considers whether the police checkpoint in question is well identified. *Cf. Clark*, 318 Ga. App. at 876 (noting that there was "no evidence that any driver . . . misunderstood the nature of the stop"— *i.e.*, nothing in the record to "contest the trial court's factual conclusion that the roadblock was *sufficiently* identifiable as a police checkpoint.") (emphasis supplied).

[17] *See supra* note 15. *Cf. Sommese v. State*, 299 Ga. App. 664, 668 (1) (683 SE2d 642) (2009) ("The touchstone of the Fourth Amendment is reasonableness. Reasonableness, in turn, is measured in objective terms by examining the totality of

until now, and what we do today, is state the obvious: The question of whether a roadblock is "well identified as a police checkpoint" within the meaning of *Lafontaine* can only be answered by evaluating the totality of circumstances (*i.e.*, objective observations)[18] surrounding that roadblock. This is not a new test. It is simply a characterization of the analytical framework currently being used by this Court in determining whether a roadblock is well identified.[19]

_____

the circumstances." (punctuation omitted)).

[18] *Cf. U.S. v. Cortez*, 449 U.S. 411, 417 (101 SCt 690, 66 LEd2d 621) (1981) (holding an investigatory stop valid when totality of circumstances gives officers "particularized and objective basis" for suspicion of criminal activity); *Darden v. State*, 293 Ga. App. 127, 130 (666 SE2d 559) (2008) (describing the totality-of-circumstances test as being one that takes "the whole picture . . . into account" and "proceeds with various objective observations.").

[19] We recognize that in *Baker*, 252 Ga. App. at 701-02 (1), we overruled a line of cases that employed a totality-of-the-circumstances test to determine whether a roadblock still complied with *LaFontaine* despite the lack of evidence of supervisory oversight. However, we did so not because we found that it was incorrect to use a totality-of-the-circumstances analysis for any one of the *LaFontaine* factors, but rather because it was improper to employ such an analysis generally as a means of justifying the marginalization of any one factor. *Id.* Indeed, it is for that reason we specifically noted in *Baker* that the *LaFontaine* factors "are not general guidelines but are minimum constitutional prerequisites." *Id.* at 701 (1). Accordingly, we do not agree with Conner's argument that *Baker* precludes this Court from employing a totality-of-the-circumstances analysis to determine whether, as a matter of law, a roadblock was well identified as a police checkpoint. To the contrary, our Fourth Amendment jurisprudence countenances such analysis. *See supra* notes 17-18.

8

We also take this opportunity to expressly reject the notion that the absence of any one item, such as cones or signs, renders a police roadblock unlawful.[20] The overarching purpose of the "well identified" requirement is simply to lessen the amount of fright or concern to drivers and permit those drivers to "see visible signs of the officers' authority,"[21] not to advertise the checkpoint as if it were the "coming

---

[20] *See Clark*, 318 Ga. App. at 876 (evaluating "circumstances of daylight search" and rejecting argument that "the Fourth Amendment requires that roadblocks be identified with orange cones and that officers working there wear reflective hats.") (citation and punctuation omitted).

[21] *Sitz*, 496 U.S. at 453 (citation and punctuation omitted); *see also U. S. v. Ortiz*, 422 U.S. 891, 895 (95 SCt 2585, 45 LE2d 623) (1975) (holding that the constitutionality of a checkpoint stems, in part, from the fact that "[a]t traffic checkpoints the motorist can see that other vehicles are being stopped, he can see visible signs of the officers' authority, and he is much less likely to be frightened or annoyed by the intrusion," thus offering greater protection to drivers' "liberty and privacy from arbitrary and oppressive interference by government officials."); *Phillips v. State*, 287 Ga. 560, 563 (697 SE2d 818) (2010) (holding that "the roadblock was properly identified," in part, because the driver "admitted at trial that he could see the roadblock in the distance where cars had been stopped."); *LaFontaine*, 269 Ga. at 253 (3) ("Roadblock stops have appreciably less intrusion on the part of travelers and do not create the fear and surprise engendered in motorists by roving patrol stops because the motorist is not singled out; the traveler is reassured when all vehicles are stopped.") (citation omitted).

attractions on a movie theater's marquee." Our case law requires that a roadblock be well identified as a police checkpoint, not that it be *explicitly* identified as such.[22]

For all of the foregoing reasons, we conclude that the roadblock at issue was sufficiently well identified as a police checkpoint and, therefore, was lawful under *Lafontaine* and its progeny. Accordingly, we reverse the trial court's order granting Conner's motion to suppress.

*Judgment reversed. Andrews, P. J., and McMillian, J., concur.*

---

[22] This is, of course, consistent with the plain meaning of the adverb "well," which means "[i]n a legally sufficient manner; unobjectionable." Black's Law Dictionary 1588 (7th ed. 1999).