**FIRST DIVISION
PHIPPS, C. J.,
ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**March 2, 2015**

# In the Court of Appeals of Georgia

A14A2066. THE STATE v. CASTILLO.

PHIPPS, Chief Judge.

Based on evidence collected during a traffic stop on May 14, 2000, Efrain Castillo was charged with driving while his license was suspended, having no proof of insurance, and committing second-degree forgery (for presenting to the officer who stopped him a social security card that did not belong to him). Castillo filed a motion to suppress the evidence, challenging the legality of the stop. The state responded that the officer had reasonable suspicion that the vehicle – which had a dealer's drive-out tag – was being driven in violation of state vehicle registration law. After a hearing, the trial court granted Castillo's suppression motion. The state appeals. For reasons that follow, we affirm.

Investigative stops of vehicles are analogous to *Terry*[1] stops and, therefore, must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. Operation of any vehicle required to be registered in the State of Georgia without a valid numbered license plate is a misdemeanor, except that, during the 30-day period within which vehicle registration is required, the purchaser of a new or used vehicle may operate the vehicle with a temporary plate issued by the dealer. At the time of the traffic stop in this case, Georgia law did not require the temporary plate to show its expiration date[.] [S]uch a requirement was added by OCGA § 40-2-8 (b) (2) (B) (i), effective July 1, 2000.[2]

And cases such as *Chiasson v. State*[3] recognize that, prior to July 1, 2000, the stop of a vehicle to investigate compliance with state registration law may have been authorized if the vehicle bore a dealer's drive-out tag which, based upon its "weathered" look, appeared to have been on the vehicle beyond the statutory 30-day period.[4]

---

[1] *Terry v. Ohio*, 392 U. S. 1 (88 SCt 1868, 20 LEd2d 889) (1968).

[2] *Chiasson v. State*, 250 Ga. App. 63, 64 (1) (549 SE2d 503) (2001) (punctuation and footnotes omitted); see Ga. L. 2000, p. 523 § 1; see also *Bius v. State*, 254 Ga. App. 634, 636 (2) (563 SE2d 527) (2002) (noting change to Georgia law).

[3] Supra.

[4] *Chiasson*, supra at 63-64 (1).

OCGA § 17-5-30 (b) states that "the burden of proving that the search and seizure were lawful shall be on the state." Hence, "[i]t is the State's burden to establish the existence of circumstances constituting an exception to the general prohibition against warrantless searches and seizures."[5]

When the trial court convened the suppression hearing on January 9, 2014, thirteen years had passed since the officer stopped Castillo on May 14, 2000 at about 7:00 p.m. The officer was asked on direct examination to "[t]ell the court about the circumstances of that contact" with Castillo. The officer testified, "I initially stopped the vehicle that Mr. Castillo was driving for a drive-out tag that appeared very worn and old. It appeared that it had been on the vehicle more than 30 days. That's why I initiated the traffic stop." The officer described the tag as "one of those paper plates." The officer was further asked on direct examination, "Did it seem substantially more than a month old or just a little bit more than a month old?" He answered, "As I'm trying to remember, it was pretty worn out. I'm trying to recall. But for me to have stopped it, it must have been fairly worn out."

---

[5] See *State v. Massa*, 273 Ga. App. 596, 597 (615 SE2d 652) (2005), citing OCGA § 17-5-30 (b).

3

In support of his challenge to the traffic stop, Castillo called as a witness his sister, who was the owner of the vehicle at the time in question. She testified on direct examination that she had purchased the car on May 4, 2000. Given that testimony, defense counsel included in closing argument,

> [S]he bought this car on May 4, 2000. Briefly ten days later, during the summer and not during a time when it is snowing a lot or there would be anything that would cause this tag to be weathered a lot, only ten days later, this tag looked, according to the officer, so old and outdated that he couldn't read it or so weathered that he found that it was a [sufficient] basis for stopping the car.

The prosecutor countered that the stop was justified, in light of the officer's testimony and the holding of *Chiasson*.[6] Additionally, as the prosecutor addressed,

> [T]he final argument that the defense made basically comes down to credibility. . . . [The] defense's argument is that the officer is not credible. We submit that, Judge, nothing has been shown in this hearing to impugn on the credibility of the officer. He had absolutely no reason to make this up. And in fact, there's a big bias for the witness who testified. It wasn't an independent witness. It was the defendant's sister. So obviously she actually does have a reason to state falsely when she actually bought the car. . . . Your Honor has only her word as far as when she bought the car. There is no official documentation tendered into

---

[6] Supra.

4

evidence that shows exactly when this car was bought or when the drive-out tag was bought.

The prosecutor added,

Even if later on it came out to be that the tag was fairly new or it was less than a month old, that's not the standard. The standard is at the time of the stop whether the officer reasonably believed that the tag was old. So even if later on the defense was able to show that the tag was less than a month old, that does not make the stop illegal. It's what the – the information that the officer had at the time of the stop that's relevant.

The trial court acknowledged the officer's testimony concerning the condition of the tag; also, the court agreed with the prosecutor that, under *Chiasson*, a weathered car tag could provide the requisite basis to stop a vehicle, acknowledging that even if "the tag wasn't 30 days old, . . . it is the perspective at the time of the observation . . . not the truth of whether it is 30 days old but what it looks like."

However, the trial court explicitly questioned the officer's recollection of the tag's condition 13 years earlier, further remarking, "[T]here's no picture of the tag." The court stated that it was faced with a "dilemma": "I certainly find [the officer's] testimony credible, but I also found the defense witness's testimony credible." The trial court ended the hearing, electing to reserve ruling on the motion so as to give the

5

defense opportunity to supplement the record, and stating that such evidence could "undermine" the officer's testimony relating to the condition of the tag.

When the court reconvened the parties on February 4, 2014, it announced that it had reviewed "the additional documentation that [defense counsel] has provided." And as the state concedes in its appellate brief, "[t]he Appellee was . . . allowed to supplement the record with documents showing that the vehicle was purchased on May 4, 2000." Further, the trial court again acknowledged *Chiasson*'s holding, as well as the officer's testimony. Then the court revealed its determination that other testimony and evidence was contrary to the officer's testimony, which had "raise[d] enough doubt" such that the court would not give "credence" to the officer's testimony. Hence, the court stated that it would grant Castillo's motion. The next day, the court entered the order, which summarily granted the motion.

The Supreme Court of Georgia has enunciated three fundamental principles which must be followed when conducting appellate review of a ruling upon a motion to suppress:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any

6

evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. On numerous occasions the appellate courts of this state have invoked these three principles to affirm trial court rulings that upheld the validity of seizures. These same principles of law apply equally to trial court rulings that are in favor of the defendant. . . .[7]

In this appeal, the state maintains that the officer's testimony, together with the holding in *Chiasson*, showed that the officer had reasonable suspicion to conduct the traffic stop of Castillo's vehicle. But the state has wholly failed to address the credibility underpinning of the trial court's decision.

"Credibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with the trier of fact. The trier of fact is not

---

[7] *Miller v. State*, 288 Ga. 286-287 (1) (702 SE2d 888) (2010), quoting *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994); see *Jones v. State*, 291 Ga. 35, 36-37 (1) (727 SE2d 456) (2012) ("When the evidence at a suppression hearing is uncontroverted and the credibility of witnesses is not in question, we conduct a de novo review of the trial court's application of the law to the undisputed facts. To the extent an issue concerns a mixed question of fact and law, we accept the trial court's findings on disputed facts and witness credibility unless they are clearly erroneous, but independently apply the law to the facts.") (citations omitted).

obligated to believe a witness even if the testimony is uncontradicted and may accept

or reject any portion of the testimony."[8]

It is evident that the officer's claim of the tag's condition – which was the *sole*

articulated basis for the stop – was found by the trial court to lack credibility.[9]

> Motions to suppress, by their nature, often turn on difficult questions of
> credibility and specific findings of fact. The principles of appellate
> review applicable to these motions were set forth to ensure that, in

---

[8] *Tate*, supra at 56 (3) (citation and footnote omitted); see *State v. Hester*, 268 Ga. App. 501, 505 (602 SE2d 271) (2004) ("The trial judge, like the jury, is the primary guardian of the rights of a citizen. An absolute rule requiring the trial judge to believe the witnesses called by the state would contradict the American system of justice.") (whole court).

[9] See *Barnett v. State*, 204 Ga. App. 491, 492 (1) (420 SE2d 43) (1992) (analyzing that the trial court, "perforce of its ruling on the suppression motion," made credibility determination) (cited in *Tate*, supra at 57 (3) and n. 6, as an example of the way reviewing courts "interpret" judicial orders in cases where the trial court, as *Tate* ascertained, did not make specific findings); see also *Hester*, supra at 504 (ascertaining that the trial court chose to disbelieve the officer's testimony, where the trial court granted the suppression motion, even though the state presented an officer's testimony, which, "[i]f believed by the trial court, . . . would [have been] more than adequate to justify" the traffic stop); *Massa*, supra at 597-598 (determining that, although the trial court did not explicitly reject the officer's testimony, the trial court's findings of fact and case law cited "suggested that the trial court had rejected the officer's testimony" that underlay the state's claim that the officer's intrusion was authorized); see generally *Miller*, supra at 289-290 (2) (concluding that, where the "trial court explicitly questioned the bases presented as the purpose for the stop of [the accused]," "credibility determinations played a significant part in the trial court's [suppression] ruling," and thus, "[t]his credibility question lies at the very core of the trial court's ruling, and it should not be negated by [the appellate court]").

difficult cases such as this one, the trial court's resolution of these issues would be given deference, as only the trial court actually sees the witnesses and hears their testimony. Staying true to these principles, a clearly erroneous standard of review must be applied in this case. . . .[10]

We find no clear error in the trial court's credibility determination.[11] The state, having thus failed to adduce credible evidence that the officer observed a tag that appeared more than 30 days old, has supplied no basis to disturb the trial court's decision to grant Castillo's motion to suppress.[12]

*Judgment affirmed. Ellington, P. J., and McMillian, J., concur.*

---

[10] *Miller*, supra at 290 (2).

[11] See *Tate*, supra at 55-56 (2) and n. 5 (noting an issue of credibility concerning the officer's testimony was created, where such testimony was considered in light of other "circumstantial evidence" that was presented at hearing; further enumerating "demeanor" as a factor that can lead a finder of fact to disregard testimony by an officer that an accused was violating the law; and concluding that "[a] rational trier of fact could believe that [the officer's] testimony was not truthful and that the officer was claiming that [accused] broke the law in order to justify an illegal stop"); *Massa*, supra; *Hester*, supra at 504-506 (affirming the grant of suppression motion, where the trial judge disbelieved the officer's testimony that underlay the state's claim that the traffic stop was justified; reiterating that "when no error of law appears on the record, and the trial court's ruling is based on the credibility of the oral testimony presented at the hearing, [an appellate court] must . . . leave the decision to the trial judge as the trier of fact"); *Barnett*, supra. See also *Miller*, supra.

[12] See *Miller*, supra; *Tate*, supra; *Massa*, supra; *Hester*, supra; *Barnett*, supra.