**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**April 11, 2017**

# In the Court of Appeals of Georgia

A17A0534. MCCOY v. THE STATE. JE-016C

ELLINGTON, Presiding Judge.

Following a bench trial, the State Court of Henry County found Latisha McCoy guilty beyond a reasonable doubt of driving under the influence of marijuana to the extent that it was less safe to drive, OCGA § 40-6-391 (a) (2). McCoy appeals, contending that the trial court erred in denying her motion to suppress evidence seized during an allegedly unconstitutional roadblock. For the reasons explained below, we affirm.

When a criminal defendant moves to suppress evidence on the basis that it was obtained as a result of an illegal warrantless search, "the burden of proving that the search and seizure were lawful shall be on the state." OCGA § 17-5-30 (b). "Hence, it is the state's burden to establish the existence of circumstances constituting an

exception to the general prohibition against warrantless searches and seizures."
(Punctuation and footnote omitted.) *State v. Castillo*, 330 Ga. App. 828, 829 (769
SE2d 571) (2015). As an appellate court, we follow three fundamental principles
when reviewing a trial court's ruling on a motion to suppress.

> First, when a motion to suppress is heard by the trial judge, that judge
> sits as the trier of facts. The trial judge hears the evidence, and his
> findings based upon conflicting evidence are analogous to the verdict of
> a jury and should not be disturbed by a reviewing court if there is any
> evidence to support it. Second, the trial court's decision with regard to
> questions of fact and credibility must be accepted unless clearly
> erroneous. Third, the reviewing court must construe the evidence most
> favorably to the upholding of the trial court's findings and judgment.

(Citation and punctuation omitted.) *Miller v. State*, 288 Ga. 286, 286 (1) (702 SE2d
888) (2010). See also *State v. Tousley*, 271 Ga. App. 874 (611 SE2d 139) (2005)
("With mixed questions of fact and law, the appellate court accepts the trial court's
findings on disputed facts and witness credibility, unless clearly erroneous, and
independently applies applicable legal principles to the facts.") (citation and
punctuation omitted).

Where a defendant moves to suppress evidence seized at a police checkpoint or roadblock, the State, to carry its burden of proving that the seizure was constitutional,

> must show that the law enforcement agency's checkpoint program had an appropriate primary purpose other than ordinary crime control – a purpose examined at [the] programmatic level, rather than by trying to determine the motives of the supervisor who implemented and the officers who conducted the particular checkpoint at issue. The State must also prove that the particular checkpoint at which the defendant was stopped was properly implemented and operated – that the five requirements enumerated in *LaFontaine*[1] were met. *LaFontaine* requires the State to show that: [1] the decision to implement the roadblock was made by supervisory personnel rather than the officers in the field; [2] all vehicles were stopped as opposed to random vehicle stops; [3] the delay to motorists was minimal; [4] the roadblock operation was well identified as a police checkpoint; and [5] the "screening" officer's training and experience was sufficient to qualify him to make an initial determination as to which motorists should be given field tests for intoxication.

---

[1] *LaFontaine v. State*, 269 Ga. 251 (497 SE2d 367) (1998).

3

(Citations and punctuation omitted.) *Williams v. State*, 293 Ga. 883, 886-887 (2) (750 SE2d 355) (2013).[2] Importantly, "[t]he factors in *LaFontaine* are not general guidelines but are minimum constitutional prerequisites with which perfunctory compliance will not suffice." (Citation and punctuation omitted.) *Owens v. State*, 308 Ga. App. 374, 376 (1) (707 SE2d 584) (2011).[3] Further, as the Supreme Court of Georgia has explained, "compliance with the *Edmond*[4] and *LaFontaine* requirements does not necessarily end the Fourth Amendment analysis of a checkpoint case. The ultimate question remains whether, under the totality of the circumstances, the challenged stop was reasonable[,]" including considerations whether the checkpoint stop was pretextual, the checkpoint was used to harass, or the

---

[2] See also *Brown v. State*, 293 Ga. 787, 798-799 (2) (e) (750 SE2d 148) (2013) (The requirement that a law enforcement agency's checkpoint program, when viewed at that programmatic level, have an appropriate primary purpose other than general crime control must not be conflated with the requirement that the decision to implement the specific checkpoint at issue be made by a supervisor in advance rather than by an officer in the field.).

[3] See *Armentrout v. State*, 332 Ga. App. 370, 373 (1) (772 SE2d 817) (2015) (accord); *State v. Conner*, 322 Ga. App. 636, 638 (745 SE2d 837) (2013) (accord); *Jacobs v. State*, 308 Ga. App. 117, 118 (706 SE2d 737) (2011) (accord); *Thomas v. State*, 277 Ga. App. 88, 90 (625 SE2d 455) (2005) (accord).

[4] *City of Indianapolis v. Edmond*, 531 U. S. 32 (121 SCt 447, 148 LEd2d 333) (2000).

4

checkpoint was otherwise arbitrary or oppressive. *Brown v. State*, 293 Ga. 787, 797 (2) (d) (750 SE2d 148) (2013). In this case, McCoy challenges only the final *LaFontaine* factor, contending that there was no evidence that the screening officer's training and experience was sufficient to qualify him to make the initial determination as to which motorists should be given field tests for intoxication.

The record shows the following undisputed facts. On July 19, 2015, McCoy stopped at a Henry County Police Department roadblock on the southbound exit ramp off of I-75 at Exit 228. After speaking with McCoy, the screening officer suspected that she was impaired from smoking marijuana. Another officer, who was part of a "H.E.A.T. unit," took over the investigation and ultimately arrested McCoy for DUI.[5]

The screening officer did not testify at the hearing on McCoy's motion to suppress. The only evidence regarding the screening officer's training and experience was the testimony of the police sergeant who authorized the roadblock. When asked what training the screening officers who were involved in the roadblock had "to make sure that they could determine that drivers need to be given field sobriety

---

[5] See *Williams v. State*, 293 Ga. at 884 (1) (The "HEAT" acronym denotes a state-subsidized Highway Enforcement of Aggressive Traffic unit.).

evaluations," the sergeant responded that the screening officers "go through a certification during their police academy, the Georgia POST."

The trial court denied McCoy's motion to suppress. On the issue of the screening officer's training and experience, the trial court found that

> all officers present were [POST] certified, and therefore had authority to be present at the roadblock and screen drivers. This certification and training allows the officers to judge which drivers may or may not be under the influence of alcohol and which need to be further investigated.

At a hearing on McCoy's motion for reconsideration of the suppression order, the trial court elaborated:

> [T]here's some things that I know from being on the bench for a lot of years and I think it's well known at least in the legal community by the lawyers and the judges and the prosecutors and defense lawyers and everybody that if an officer holds POST certification then he or she is authorized to make arrests. . . . POST certification gives you the ability to put a badge and gun on, drive a patrol car, pull people over and arrest them. So I can't see how POST certification is not sufficient for a screening officer. . . . [T]he POST certification authorizes [an officer] I think to be a screening officer just by that[.] . . . I can't imagine that a POST certified officer cannot act as a screening officer based on the testimony that I've heard, the experience that I've had with these kind of cases[.]

McCoy contends that, "[i]f POST Certification, without more, was sufficient to satisfy the fifth *LaFontaine* requirement that the screening officer's training and experience be sufficient to qualify him to make an initial determination as to which motorists should be given field tests for intoxication, such a requirement would be superfluous and completely unnecessary since all police officers on the streets and highways of this State must be POST Certified." We note that the Supreme Court of Georgia did not provide any express guidance in *LaFontaine* regarding how to determine whether a screening officer has the requisite training and experience. 269 Ga. at 253 (3). It is instructive, however, to consider the context in which the Supreme Court incorporated the final factor in the list of "specific factors to determine when a roadblock is satisfactory." Id.[6] For all of the factors, the Supreme

---

[6] See *Michigan Dept. of State Police v. Sitz*, 496 U. S. 444 (110 SCt 2481, 110 LEd2d 412) (1990) (A sobriety checkpoint stop is not unreasonably intrusive in a way that outweighs the state's legitimate interest in preventing drunk driving, where the stoppage time for cars at the checkpoint is brief, the initial visual observation and questioning of motorists is limited, the checkpoint is set up to avoid provoking fear and surprise for law-abiding motorists, and the officers conducting the checkpoint are not free to decide which motorists would be stopped and which would not.); 74 ALR5th 319, "Validity of police roadblocks or checkpoints for purpose of discovery of alcoholic intoxication – post-Sitz cases," §§ 4, 6, 8, 12.5 (Originally published in 1999) (summarizing 21 published Georgia cases requiring that the screening officer have sufficient training and experience to make the initial determination as to which motorists should be given field tests for intoxication; referencing no cases from the federal courts or from any other state with this requirement).

Court cited this Court's decision in *State v. Golden*, 171 Ga. App. 27 (318 SE2d 693) (1984). In *Golden*, we found that the screening officer's training and experience was sufficient to enable him to make the initial determination as to which motorists should be given the field tests for intoxication. 171 Ga. App. at 30 (2). We set the bar very low for the requisite level of training and experience, however, noting the long-standing rule in Georgia "that any person may testify, on the basis of personal observation, as to whether another person did or did not appear to be intoxicated on a given occasion." (Citations omitted.) Id.[7] We have reaffirmed this principle as recently as one year ago.[8] In this case, it is evident that the trial court took judicial

[7] See *Knight v. State*, 271 Ga. 557, 562 (6) (521 SE2d 819) (1999) ("Any individual may testify, on the basis of personal observation, about whether another person did or did not appear to be intoxicated on a given occasion.") (citation omitted); *Jones v. State*, 168 Ga. App. 106 (2) (308 SE2d 209) (1983) ("Any witness who has observed an individual may state, based on his observations whether or not an individual was under the influence of alcohol.") (citation and punctuation omitted); *Joiner v. State*, 51 Ga. App. 463 (1) (180 SE 911) (1935) ("A witness who had, and was able to improve, suitable opportunities for observation, may state whether a person was intoxicated and the extent of his intoxication. Drunkenness is easy of detection and difficult of explanation.") (citations and punctuation omitted).

[8] See *Dagne v. Schroeder*, 336 Ga. App. 36, 39 (3) (783 SE2d 426) (2016) ("Georgia appellate courts have held that a witness may testify, on the basis of personal observation, about whether another person did or did not appear to be intoxicated on a given occasion.") (citations omitted); see also *Sweetenburg v. State*, 197 Ga. App. 36, 37 (3) (397 SE2d 451) (1990) (accord); *Luke v. State*, 177 Ga. App. 518, 519 (2) (340 SE2d 30) (1986) ("[A] witness who satisfactorily shows that he had

notice of the fact that any POST-certified police officer in Georgia has training and experience sufficient to qualify him to make an initial determination as to which motorists stopped at a roadblock should be given field tests for intoxication.[9] We conclude that it is commonly known and cannot reasonably be questioned that any police officer, to obtain certification in Georgia, has received training in law enforcement activities that concern impaired drivers. See *Knight*, 271 Ga. at 562 (6) ("[B]ecause of experience and training, a police officer can testify about the state of

---

opportunity to observe, and did observe, the condition of another, may testify whether that person was under the influence of intoxicants and the extent thereof, stating the facts upon which the opinion is based[.]"); see also Paul S. Milich, Georgia Rules of Evidence § 15:2 at 491, n. 17 (2016-2017 ed.) (Under OCGA § 24-7-701 (a), a lay witness may express an opinion about another person's intoxication, so long as the witness's opinion is based on personal knowledge and the witness states the factual basis for the opinion.).

[9] See *Graham v. State*, 275 Ga. 290, 292 (2) (565 SE2d 467) (2002) (Judicial notice "is not evidence, but takes the place of evidence. By taking judicial notice of a fact [that is] commonly known, the court avoids the needless formality of introducing evidence to prove an incontestable issue.") (punctuation and footnotes omitted); Paul S. Milich, Ga. Rules of Evidence, § 4:2 (database updated October 2016) ("The purpose of allowing judicial notice of adjudicative facts is economy. If the fact in question is such a matter of public knowledge that its truth cannot reasonably be questioned, it wastes valuable court time to require formal proof of such a fact.") (footnotes omitted); OCGA § 24-2-201 (b) ("A judicially noticed [adjudicative] fact shall be a fact which is not subject to reasonable dispute in that it is either: (1) Generally known within the territorial jurisdiction of the court; or (2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

an individual's sobriety.") (citation omitted); OCGA § 35-8-1 et seq. (Georgia Peace Officer Standards and Training Act). Given that any person may give an opinion, on the basis of personal observation of another person on a given occasion, that the other person did or did not appear to be intoxicated, and given that any POST-certified officer will have had some training in law enforcement activities that concern impaired drivers, we conclude based on the foregoing authorities that the trial court in this case did not err in denying McCoy's motion to suppress based on its finding that the POST-certified screening officer had training and experience sufficient to enable him to make the initial determination as to which motorists should be given the field tests for intoxication.[10]

*Judgment affirmed. Andrews and Rickman, JJ., concur.*

---

[10] See *Hurt v. State*, 307 Ga. App. 316, 317 (704 SE2d 434) (2010) (evidence included the uncontradicted testimony of the supervisor who decided to conduct the roadblock at issue that "all of the officers implementing the roadblock were POST-certified and had training in DUI detection"); *Golden*, 171 Ga. App. at 30 (2) (evidence showed that the screening officer had two and one-half years of police service and had attended a DUI enforcement school operated by the North Georgia Police Academy).