303 Ga. 551
FINAL COPY

S17G1530. McCOY v. THE STATE.

BOGGS, Justice.

Appellant Latisha Shana McCoy was charged with driving under the influence of marijuana to the extent it was less safe to drive after she was stopped at a roadblock in Henry County. She moved to suppress all evidence obtained from the stop and arrest on the ground that the roadblock violated the Fourth Amendment. The trial court denied McCoy's motion, and following a bench trial, found her guilty. She appealed to the Court of Appeals, which affirmed the trial court's denial of her motion to suppress. McCoy v. State, 341 Ga. App. 216 (799 SE2d 354) (2017). We granted McCoy's petition for certiorari on the following issue: "Did the Court of Appeals err in its application of LaFontaine v. State, 269 Ga. 251 (497 SE2d 367) (1998), in determining whether the roadblock was reasonable under the Fourth Amendment, in particular the factor that considers the screening officer's training and

experience?"[1]

Although we do not follow the analysis employed by the Court of Appeals, we affirm the judgment, and in doing so we clarify the factors needed to determine whether a roadblock is reasonable under the Fourth Amendment.

The record reveals that the parties agreed to the following at a stipulated bench trial: McCoy was stopped at a roadblock in Henry County around 12:30 a.m. The screening officer suspected that she was impaired from marijuana. Another officer took over the investigation and subsequently arrested McCoy for DUI.[2]

Prior to trial however, McCoy moved to suppress all evidence seized as a result of the stop and arrest. The screening officer did not testify at the hearing on the motion to suppress. Rather, the only individual to testify was the police sergeant who made the decision to implement the roadblock pursuant to the

---

[1] The State notes that McCoy failed to file a notice of intent to apply for certiorari with the Court of Appeals within ten days of the entry of the Court of Appeals' judgment as required by Supreme Court Rule 38 (1). However, this Court does not consider the filing of a notice of intent to be jurisdictional and does not generally dismiss or deny a petition for certiorari for failure to timely file a notice of intent.

[2] This officer asked McCoy if she had smoked any marijuana, and McCoy responded that she "smoked a blunt about an hour prior to driving." The officer noticed that McCoy had red, bloodshot, glassy eyes, and he detected the odor of marijuana on her breath.

police department's written policy. When asked what training the screening officers had to determine if a driver needed to be given field sobriety tests, the sergeant responded that the officers "go through a certification during their police academy, the Georgia POST."[3] At the hearing, McCoy argued that the roadblock violated the Fourth Amendment because the State failed to meet the fifth requirement of LaFontaine because it did not prove that the screening officer's training and experience qualified him "to make the initial determination as to which motorists should be given field sobriety tests for intoxication." The trial court denied McCoy's motion to suppress, finding that the State met its burden under LaFontaine because the testimony of the sergeant established that all officers present were POST-certified, and that this certification and training allows the officer to judge which drivers may or may not be under the influence of drugs or alcohol.

The Court of Appeals affirmed the ruling of the trial court, noting that on motion for reconsideration of the denial of McCoy's motion to suppress, the

___

[3] See OCGA § 35-8-1 et seq. ("Georgia Peace Officer Standards and Training Act"). POST-certification "means the officer has met the minimum requirements to be a 'peace officer' in this state (see OCGA §§ 35-8-2 (8) (A), 35-8-8 (a) and 35-8-10)." Zilke v. State, 299 Ga. 232, 235 (787 SE2d 745) (2016).

trial court took judicial notice of the fact that any POST-certified police officer in Georgia has training and experience sufficient to qualify him to make an initial determination as to which motorists stopped at a roadblock should be given field sobriety tests. McCoy, supra, 341 Ga. App. at 220.[4] The court held:

> Given that any person may give an opinion, on the basis of personal observation of another person on a given occasion, that the other person did or did not appear to be intoxicated, and given that any POST-certified officer will have had some training in law enforcement activities that concern impaired drivers, we conclude based on the foregoing authorities that the trial court in this case did not err in denying McCoy's motion to suppress based on its finding that the POST-certified screening officer had training and experience sufficient to enable him to make the initial determination as to which motorists should be given the field tests for intoxication.

Id. at 221.

As we explained most recently in Brown v. State, 293 Ga. 787 (750 SE2d 148) (2013), this Court in LaFontaine

> identified five minimum requirements that a particular checkpoint must satisfy to be upheld as constitutional: A roadblock is satisfactory where [1] the decision to implement the roadblock was made by supervisory personnel rather than the officers in the field; [2] all vehicles are stopped as opposed to random vehicle stops; [3]

---

[4] Given our disposition of this case, we need not decide if the trial court properly utilized judicial notice. See OCGA § 24-2-201.

4

the delay to motorists is minimal; [4] the roadblock operation is well identified as a police checkpoint; and [5] the "screening" officer's training and experience is sufficient to qualify him to make an initial determination as to which motorists should be given field tests for intoxication.

(Citations and punctuation omitted.) Brown, supra, 293 Ga. at 793 (2) (b). We explained further that the United States Supreme Court in City of Indianapolis v. Edmond, 531 U. S. 32 (121 SCt 447, 148 LE2d 333) (2000), "supplemented LaFontaine's requirements for the implementation and operation of a constitutionally valid checkpoint by adding the requirement of an inquiry into the primary purpose of the checkpoint program." (Footnote and emphasis omitted.) Brown, supra, 293 Ga. at 796 (2) (d). And we noted that "compliance with the Edmond and LaFontaine requirements does not necessarily end the Fourth Amendment analysis of a checkpoint case. The ultimate question remains whether, under the totality of the circumstances, the challenged stop was reasonable. [Cit.]" Id. at 797 (2) (d).

McCoy argues that the Court of Appeals erred in its application of the fifth LaFontaine factor. Specifically, she contends the State presented no evidence that the screening officer's training and experience was sufficient to qualify him to make an initial determination as to which motorists should be given field tests

5

for intoxication. McCoy asserts that, although all officers who are POST-certified may receive training in DUI detection, training does not equate to experience. For this reason, she asserts that the roadblock violated the Fourth Amendment.

The LaFontaine factors to determine whether a roadblock is satisfactory were adopted by this Court based on the Court of Appeals opinion in State v. Golden, 171 Ga. App. 27 (318 SE2d 693) (1984). The Court of Appeals held that, under the facts presented in Golden,

> [t]he decision to implement the roadblock at issue in this case was made by supervisory personnel rather than by the officers in the field, and the operation was carried out pursuant to specific, pre-arranged procedures requiring all passing vehicles to be stopped at the checkpoint and leaving no discretion to the officers in this regard. It is clear that the delay experienced by passing motorists was minimal, lasting only a minute or two unless a violation was noted, and that the operation was well identified as a police checkpoint. Taking all of these factors into consideration, we hold that the *initial detention* of the defendant at the roadblock was reasonable and resulted in no violation of his Fourth Amendment rights.

(Footnote omitted; emphasis supplied.) Id. at 29-30 (2). This holding of the Court of Appeals formed the basis for the first four factors we articulated in

6

LaFontaine.[5] However, the <u>Golden</u> court held further:

> In addition, we find that the screening officer's experience and training, which included 2-1/2 years of police service and attendance at a DUI enforcement school operated by the North Georgia Police Academy, were amply sufficient to enable him to make an initial determination as to which motorists *should be given the field tests for intoxication*. Indeed, it is the rule in Georgia that any person may testify, on the basis of personal observation, as to whether another person did or did not appear to be intoxicated on a given occasion.

(Citations omitted; emphasis supplied.) Id. at 30 (2). This analysis of what is required for the screening officer to make a determination as to which motorists should be given field tests for intoxication became the fifth <u>LaFontaine</u> factor. But unlike the other four, it involves what occurs subsequent to the initial roadblock stop. Indeed, a roadblock stop can become a <u>Terry</u> stop — when an

---

[5] Courts in other jurisdictions employ factors similar to the first four factors stated in <u>LaFontaine</u> to determine whether a roadblock is constitutional. See <u>United States v. Bowman</u>, 496 F3d 685, 692 (III) (A) (D.C. Cir. 2007) (among other factors, checkpoints must be minimally intrusive, clearly visible, part of some systematic procedure that strictly limits the discretionary authority of police officers, and detain drivers no longer than is reasonably necessary to accomplish the purpose of the checkpoint); <u>Commonwealth v. Baker</u>, 76 NE3d 1021, 1022-1023 (Mass. App. 2017) (the selection of motor vehicles stopped must not be arbitrary, motorists' inconvenience must be minimized, the procedure must be pursuant to a plan devised by supervisory law enforcement personnel, and officers must not have discretion to target which vehicles to stop); <u>Commonwealth v. Cox</u>, 491 SW3d 167, 170-171 (II) (A) (Ky. 2015) (officers should comply with procedures established by superior officers, the roadblock should be clearly visible with at least some officers in uniform, officers should have no discretion in deciding which vehicles to stop, and motorists should not be detained any longer than necessary).

officer has reasonable suspicion that a motorist may have committed a crime such as driving under the influence — which must also comply with the Fourth Amendment. See, e.g., State v. McPartland, 2012 Me. LEXIS 12, at p. 10 (II) (A) (Me. 2012) ("an officer questioning a motorist stopped at the initial roadblock must have an objectively reasonable basis for suspecting that the motorist is driving under the influence before the officer can refer the motorist to secondary screening for impairment"); Commonwealth v. Murphy, 910 NE2d 281, 288 (Mass. 2009) ("[t]he only factor that distinguishes a secondary screening stop from the more traditional Terry stop on the roadway or sidewalk is that the information that gave rise to reasonable suspicion was obtained from observations made during the brief initial suspicionless stop at the sobriety checkpoint"; "[w]e shall evaluate the lawfulness of a secondary screening, or any Terry stop, based on whether the evidence supports the officer's finding of reasonable articulable suspicion"). See also Terry v. Ohio, 392 U. S. 1 (88 SCt 1868, 20 LE2d 889) (1968).

Although the fifth LaFontaine factor seems to consider whether the screening officer is "qualified" to determine whether to conduct a Terry stop, a proper Terry stop "requires that the detaining officer have only 'reasonable,

8

articulable suspicion' that a crime may have been committed. Articulable suspicion is 'less than probable cause, but greater than mere caprice.'" (Citations omitted.) Stafford v. State, 284 Ga. 773, 774 (671 SE2d 484) (2008).

The question that the LaFontaine analysis answers is not the validity of a Terry stop following a roadblock, it is the constitutionality of the roadblock itself. However the fifth LaFontaine factor does not assist in the determination of whether a roadblock is constitutional, as that determination need only be made by application of the first four factors and the separate Edmond test. We therefore disapprove the fifth LaFontaine factor, directing courts reviewing roadblock stops to instead consider, if challenged, whether the screening officer had reasonable, articulable suspicion to refer the defendant for further detention and field tests.[6]

---

[6] We have considered whether stare decisis warrants continued adherence to the fifth LaFontaine factor. In State v. Jackson, 287 Ga. 646 (697 SE2d 757) (2010), we explained that in determining whether to disapprove precedent, we consider "'factors such as the age of the precedent, the reliance interests at stake, the workability of the decision, and, most importantly, the soundness of its reasoning.'" (Citation omitted.) Id. at 658 (5). Taking these points in reverse order, the reasoning in LaFontaine as to the fifth factor, as we explained above, misconstrued the Court of Appeals' holding in Golden, and other courts do not appear to use the factor as part of the constitutional analysis of roadblocks; a four-factor analysis is more workable, especially when the fifth factor has never seemed to be dispositive, and thus the fifth factor serves only to unusefully expand or unhelpfully confuse the roadblock analysis; the factor established no property or contract interest or substantive right and thus generated no meaningful reliance interests; and while it is 20 years old, LaFontaine is not an

9

As McCoy takes issue only with the fifth factor, and presented no argument in her motion to suppress or at the hearing on the motion challenging the screening officer's personal observations,[7] we conclude that the roadblock was not unconstitutional on the ground asserted.

Judgment affirmed. All the Justices concur.

---

ancient ruling deeply embedded in the law, and indeed there are only a few appellate decisions applying the fifth factor. Stare decisis therefore does not preclude disapproving the continued consideration of LaFontaine's fifth factor.

[7]At the hearing on the motion to suppress, counsel asserted that "the only issue, . . . is whether the roadblock was constitutional." And the trial court ruled only on that issue. During oral argument in this Court, however, counsel asserted that no one testified as to McCoy's condition, how she appeared, etc., and that there was no evidence as to whether it was reasonable to move McCoy for further testing. This Court will not consider arguments asserted for the first time on appeal that were neither raised nor ruled upon by the trial court. See Johnson v. State, 302 Ga. 774, 781 (3) (b) n.6 (809 SE2d 769) (2018).

10

Decided May 7, 2018.

Certiorari to the Court of Appeals of Georgia — 341 Ga. App. 216.

Joe M. Harris, Jr., for appellant.

John A. Pipkin III, Solicitor-General, Caitlin McGillicuddy, Meredith C. Florio,  Assistant Solicitors-General, for appellee.